CHIEF JUSTICE RABNER delivered the opinion of the Court.
**332 In this appeal, we consider whether the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, requires disclosure of the names and addresses of successful bidders at a public auction of government property.
The Bergen County Prosecutor's Office seized sports memorabilia and later auctioned it off to the public. Plaintiff made an OPRA request for the names and addresses of the successful bidders. Citing privacy concerns, the Prosecutor's Office declined to produce that information. Plaintiff then filed a lawsuit to obtain the records under OPRA and the common law, and the trial court ordered the records disclosed. The Appellate Division looked to **333 various factors outlined in Doe v. Poritz, 142 N.J. 1, 88, 662 A.2d 367 (1995), to evaluate the request and assess defendants' privacy argument. The panel concluded that the bidders had a reasonable expectation of privacy in the information sought and reversed.
OPRA favors broad public access to government records. At the same time, it directs agencies to safeguard "a citizen's personal information ... when disclosure ... would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. In light of that language, courts are not required to analyze the Doe factors each time a party asserts that a privacy interest exists. A party must first present a colorable claim that public access to records would invade a person's reasonable expectation of privacy. See ibid.
Here, defendants could not make that threshold showing. It is not reasonable to expect that details about a public auction of government property--including the names and addresses of people who bought the seized property--will remain private.
*204 Without a review of the Doe factors, we find that OPRA calls for disclosure of records relating to the auction. We therefore reverse the judgment of the Appellate Division.
I.
On May 3, 2014, an auction was held at the Bergen County Law and Public Safety Institute to sell sports memorabilia seized by the Bergen County Prosecutor's Office. The Prosecutor's Office hired Caspert Management Company, a private auctioneer, to conduct the auction.
Bidders could participate in the auction either in person or online. All live bidders completed a registration form that asked them to list their names, addresses, telephone numbers, and e-mail addresses. They were assigned a paddle number to use at the auction. Online bidders were also assigned a paddle number. At oral argument, counsel for the Prosecutor's Office represented **334 that online bidders had to present the same personal information to participate.
There were thirty-nine successful bidders. Successful live bidders received receipts that listed only their paddle numbers; no personal information appeared on the receipts. Successful online bidders got receipts that listed their paddle numbers, names, and addresses. After a news report raised questions about whether the auctioned items were authentic, the Prosecutor's Office offered the buyers refunds.
On December 9, 2014, plaintiff William Brennan submitted a request to the Prosecutor's Office, based on OPRA and the common law, for "[r]ecords of payment received from all winning bidders," "[c]ontact information for each winning bidder," and other records relating to the contract with Caspert. (The latter category of records is not part of this appeal.) In response, the Prosecutor's Office offered redacted copies of receipts that did not include the buyers' names or addresses. The Office explained that it had sent the buyers letters to ask if they would consent to disclosure of their personal information. For buyers who consented, the Office represented it would provide unredacted receipts. Plaintiff did not pick up the compact disc of redacted receipts that was prepared.
Days later, plaintiff filed a complaint that asserted he was entitled to the requested records under OPRA and the common law right of access. Plaintiff also alleged violations of the State Constitution and the New Jersey Civil Rights Act but later withdrew those claims before the trial court. The complaint named as defendants the Bergen County Prosecutor's Office and its custodian of records, who filed an answer and a motion to dismiss.
In a written decision dated February 25, 2015, the Honorable Peter E. Doyne, then Assignment Judge for the Bergen Vicinage, denied the motion to dismiss but declined to order immediate disclosure. The court found that the winning bidders did not have a reasonable expectation of privacy in their personal information under OPRA. "[I]n light of defendants' good faith attempt to **335 comply with the request and the state's obligation to safeguard personal information," however, the court granted defendants ten more days to contact the winning bidders and advise them either to object to the release of their personal information or to move to intervene.
The Prosecutor's Office, in turn, informed the court that it sent a letter to the thirty-nine successful bidders; that nineteen responded; and that all but three objected to the release of their personal information. Based on the responses, the Prosecutor's Office declined to provide plaintiff the unredacted records.
*205 On June 12, 2015, the Honorable Bonnie J. Mizdol, the Vicinage's new Assignment Judge, issued a written opinion that directed defendants to release the requested information under OPRA. The trial court analyzed defendants' privacy argument under the Doe factors. The court found that the buyers' privacy interest was "limited," in that most names and addresses are already publicly available from various sources. Likewise, because the information was not "private," the court found that the potential for harm was "relatively miniscule." The court noted that plaintiff sought names and addresses, not social security numbers. As a result, any concern that disclosure would create a security risk for the buyers was "only speculative."
The Appellate Division reversed. To determine whether the records were shielded under OPRA's privacy clause, the panel weighed the Doe factors. The panel concluded that the buyers had a reasonable expectation of privacy in their names and addresses--the same level of confidentiality they could expect at an auction of private property. The panel disagreed with the trial court that "the privacy interest in one's name and address is 'very limited.' " Because the purchase of sports memorabilia could reveal that an individual is a collector, the panel found that the buyers' privacy interests were heightened. The panel also disagreed with the conclusion that the buyers' concerns were too speculative because disclosure of the receipts and registration forms "could make the bidders targets of theft." Finally, the panel **336 observed that the interest in government accountability would not be served by disclosure because the "bidders were not responsible for any government actions in connection with the auction." For similar reasons, the Appellate Division found that plaintiff was not entitled to disclosure under the common law.
We granted plaintiff's petition for certification. 230 N.J. 357, 167 A.3d 648 (2017). We also granted leave to appear as amicus curiae to Libertarians for Transparent Government.
II.
Plaintiff argues that the Appellate Division erred in allowing the Prosecutor's Office to withhold the names and addresses of the bidders. Plaintiff contends that the ruling failed to adhere to OPRA's presumption of openness; that names and addresses are not exempt under OPRA; that prior Executive Orders and legislative history support that conclusion; that the ruling starkly contrasts with precedent; and that the Doe factors favor disclosure here.
Defendants argue that the Appellate Division appropriately analyzed the Doe factors and correctly denied disclosure. Defendants agree with the panel's findings that the buyers had a reasonable expectation that their personal information would remain private; that disclosure would place the buyers at risk by linking them to the ownership of valuable sports memorabilia; and that the release of information would serve no public purpose. Defendants also maintain that the records should not be released under the common law.
Amicus Libertarians for Transparent Government argues that the names and addresses of purchasers of government property must be disclosed in order to guard against corruption and wrongdoing. Amicus also contends that courts have "over-applied" Burnett v. County of Bergen, 198 N.J. 408, 968 A.2d 1151 (2009), which adopted the Doe factors for OPRA cases. According to amicus, this Court has previously rejected attempts to "over-apply" the Doe factors and should do so again. In addition, amicus **337 submits that an analysis of the Doe factors is not warranted *206 in cases that involve home addresses alone.
III.
OPRA calls for "ready access to government records" by the public. Burnett, 198 N.J. at 421, 968 A.2d 1151. The statute provides that "all government records shall be subject to public access unless exempt," and "any limitations on the right of access ... shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. The law also places the burden on the public agency to prove that it appropriately denied a request. N.J.S.A. 47:1A-6.
OPRA broadly defines the term "government record." The phrase includes any documents "made, maintained or kept on file in the course of ... official business." N.J.S.A. 47:1A-1.1. At the same time, the statute declares that a public agency must "safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1 (emphasis added). The meaning of that privacy clause is central to this appeal.
The statute lists twenty-three exemptions. N.J.S.A. 47:1A-1.1. None, however, provide an overarching exception for the disclosure of names or home addresses. One exception specifically prevents public access to the following personal information: "that portion of any document which discloses the social security number, credit card number, unlisted telephone number or driver license number of any person." Ibid. Under N.J.S.A. 47:1A-5(a), custodians must redact that information from government records before allowing access to them. The exemption, however, does not mention or protect names or home addresses.
Several other exemptions encompass names and home addresses but prevent their release only in limited situations. Personal identifying information--including a person's name and address--is exempt from disclosure when received "in connection with the **338 issuance of any license authorizing hunting with a firearm." N.J.S.A. 47:1A-1.1. "Personal firearms records"--including a person's name and address--which are "contained in a background investigation ... of any applicant for a permit to purchase a handgun, firearms identification card license, or firearms registration" are also exempt. Ibid.
In addition, OPRA protects crime victims whose personal information appears in government records. A defendant convicted of a crime may not gain access to the victim's home address or various other personal identifiers. N.J.S.A. 47:1A-2.2(a). OPRA also exempts from disclosure any information that is protected by any other state or federal statute, regulation, or executive order. N.J.S.A. 47:1A-9(a). As a result, the home address of a victim of domestic violence cannot be obtained through OPRA. See N.J.S.A. 47:4-2 to -4.
As the above examples reveal, the Legislature has chosen to prevent disclosure of home addresses in select situations. Aside from those particular exemptions, however, OPRA does not contain a broad-based exception for the disclosure of names and home addresses that appear in government records.
That issue has been debated before. On July 5, 2002, just days before OPRA went into effect, Governor McGreevey issued Executive Order 21. To give effect to "the legislative directive that a public" agency must "safeguard from public access a citizen's personal information with which it has been entrusted," the Executive Order declared that "an individual's home address and home telephone number, as well *207 as his or her social security number, shall not be disclosed," except under limited circumstances. Exec. Order No. 21 ¶ 3, 34 N.J.R. 2487(a) (July 5, 2002).
One month later, the Governor rescinded the above provision of Executive Order 21 and asked the Privacy Study Commission "to promptly study the issue of whether and to what extent the home address and home telephone number of citizens should be made publicly available by public agencies." Exec. Order No. 26 ¶ 5, 34 N.J.R. 3043(b) (Aug. 13, 2002).
**339 The Commission held hearings and issued a final report in 2004. It recommended, among other things, that (a) "[h]ome telephone numbers ... should not be disclosed"; (b) "[p]ublic agencies should notify individuals that their home addresses may be disclosed pursuant to OPRA requests"; (c) "[i]ndividuals should be permitted to provide an address of record for disclosure purposes ... when interacting with public agencies"; (d) "[t]he Governor or Legislature should establish objective guidelines defining when and from which government records home addresses should be redacted"; (e) "[i]ndividuals should be permitted to opt out of disclosure of their home addresses"; and (f) "computer systems and applications should be programmed to collect but not disclose home addresses and telephone numbers." Final Report: Privacy Study Commission 16 (Dec. 2004), https://dspace.njstatelib.org/xmlui/bitstream/handle/10929/22262/c58152004.pdf?sequence=1&isAllowed=y (emphasis added).
The Legislature has amended OPRA multiple times since the report was issued. See L. 2005, c. 170, § 1; L. 2010, c. 75, § 5; L. 2013, c. 112, § 1; L. 2013, c. 116, § 1; L. 2014, c. 19, §§ 2, 3; L. 2015, c. 59, § 1; L. 2017, c. 266, § 4. But neither the legislative nor the executive branch, by law or executive order, has adopted the recommendations.
IV.
We review the interpretation of a statute de novo. Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294, 166 A.3d 1140 (2017) ; Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 273-74, 166 A.3d 1125 (2017).
As a threshold matter, the documents sought in this case qualify as government records under OPRA. Records of public auctions of forfeited government property are plainly "government records" under the law, and no specific exemption applies. See N.J.S.A. 47:1A-1.1.
We turn next to the statute's privacy provision. The provision, once again, directs agencies to safeguard personal information **340 that, if disclosed, "would violate [a] citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. The trial court considered the Doe factors, found only a limited privacy interest under the circumstances, and ordered disclosure. The Appellate Division thoroughly examined defendants' privacy claim under Burnett and Doe and found otherwise.
Burnett involved "a single request for eight million pages of land title records of all types, extending over a period of twenty-two years, which contain[ed] names, addresses, social security numbers, and signatures of countless citizens." 198 N.J. at 414, 968 A.2d 1151. That information provided a potential roadmap to identity fraud. Ibid. The Court found that the broad request for detailed personal information implicated OPRA's privacy provision, particularly because the records contained social security numbers. Id. at 428, 968 A.2d 1151.
To balance the statute's competing aims--ready access to government records *208 while safeguarding a citizen's reasonable expectation of privacy--the Court looked to the factors identified in Doe, 142 N.J. at 88, 662 A.2d 367. Id. at 428-37, 968 A.2d 1151. The Doe factors call for an examination of
(1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
[ Id. at 427, 968 A.2d 1151 (quoting Doe, 142 N.J. at 88, 662 A.2d 367 ).]
The Court considered and balanced the factors and concluded that they weighed in favor of redacting social security numbers--not home addresses--from the requested records, with the costs passed on to the requestor. Id. at 437-38, 968 A.2d 1151. The Court limited its holding to the facts of the case:
a bulk request for millions of realty records, spanning decades, which contain a substantial number of [social security numbers] the requestor does not need, whose dissemination via a centralized computer database would pose an increased risk of identity theft to countless individuals, with no possibility of advance notice to those **341 individuals, where the request does not further OPRA's core aim of transparency in government.
[ Id. at 437, 968 A.2d 1151.]
More recently in Carter, the Court once again turned to the Doe factors to analyze a privacy claim. 230 N.J. at 279-80, 166 A.3d 1125. The plaintiff sought copies of financial assistance applications and hardship payments made to firefighters through the Firemen's Association. Id. at 267-68, 166 A.3d 1125. The Association noted that the records sought contained "the complete personal financial history of individual applicants." Id. at 280, 166 A.3d 1125. After a review of the Doe factors, the Court declined to order disclosure of the records. Ibid.
Neither Burnett nor Carter, however, requires courts to analyze the Doe factors every time a party asserts that a privacy interest exists. In Asbury Park Press v. County of Monmouth, for example, the Court ordered disclosure of a settlement agreement between the County of Monmouth and an employee. 201 N.J. 5, 6, 986 A.2d 678 (2010). The employee had filed a lawsuit claiming sex discrimination, harassment, retaliation, and a hostile work environment. Id. at 6, 986 A.2d 678. The County relied on OPRA's privacy clause to try to prevent disclosure of the agreement. Id. at 6-7, 986 A.2d 678.
Noting that the case was "a far cry from Burnett," the Court quickly dispensed with the argument. Ibid. The Court explained that "OPRA's privacy clause has no application here because this case does not implicate the concerns raised in Burnett." Id. at 7, 986 A.2d 678. The Court also saw "no reason to analyze the Doe factors" when "a former county employee chose to file a public action--a complaint against the County which was available to the public"--and the matter would have unfolded in open court had the case not settled. Ibid. Disclosure of the settlement, the Court observed, "would not violate any reasonable expectation of privacy." Ibid.
As OPRA states, it is only "when disclosure ... would violate the citizen's reasonable expectation of privacy" that a **342 public agency must safeguard records from public access. N.J.S.A. 47:1A-1 (emphasis added). When courts interpret a statute, they strive to give meaning to the Legislature's intent by following the statute's *209 plain language if it is clear. Carter, 230 N.J. at 274, 166 A.3d 1125 ; State v. Morrison, 227 N.J. 295, 308, 151 A.3d 561 (2016). We therefore find that, before an extended analysis of the Doe factors is required, a custodian must present a colorable claim that public access to the records requested would invade a person's objectively reasonable expectation of privacy.
The custodians in Burnett and Carter raised serious privacy concerns that established far more than a colorable claim. The threshold showing they presented justified a searching analysis of the Doe factors. By contrast, the custodian in Asbury Park Press did not present a colorable privacy claim at the outset. When a claim of privacy falls short in that way, there is no need to resort to the Doe factors.
V.
In this case, defendants did not present a colorable claim in support of their privacy argument. Consider the context of this appeal. The bidders knew that they were participating in a public auction. The use of paddles, a common practice at auctions, did not suggest otherwise. And the participants knew that they were bidding on seized property forfeited to the government.
Forfeiture proceedings and public auctions of forfeited property are not conducted in private. Before the State can subject property to forfeiture, it must file a complaint and give notice to "any person known to have a property interest in the article." N.J.S.A. 2C:64-3(a) to (c). If contested, the matter is then aired in court. N.J.S.A. 2C:64-3(f). In addition, the Legislature generally requires government entities to provide public notice in advance of a public auction. See, e.g., N.J.S.A. 40A:14-157(a) ; N.J.S.A. 52:27B-68 ; N.J.S.A. 39:3-40.3(b)(1).
**343 All of those circumstances undermine the notion that a bidder could reasonably expect the auction in this case would be cloaked in privacy. Viewed objectively, it was unreasonable for a buyer to expect that the information requested would remain private. If anything, the sale of government property at a public auction is a quintessential public event that calls for transparency. To guard against possible abuses, the public has a right to know what property was sold, at what price, and to whom. OPRA's plain terms call for disclosure of that type of recorded information, including the names and addresses of successful bidders. To hold otherwise would jeopardize OPRA's purpose: "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." See Mason v. City of Hoboken, 196 N.J. 51, 64, 951 A.2d 1017 (2008) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329, 864 A.2d 446 (Law Div. 2004) ).
In any event, we agree with Judge Mizdol that the privacy interest asserted in this case was limited. We agree as well that the risk of harm was speculative. Because we conclude that disclosure is required under OPRA, we do not reach plaintiff's claim under the common law.
VI.
For the reasons set forth above, we reverse the judgment of the Appellate Division and direct that the records plaintiff requested be disclosed under OPRA.
JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.