## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2252-18T3

DOREEN FREGA,

 Plaintiff-Respondent,

v.

BOROUGH OF SADDLE RIVER
and JOY C. CONVERTINI, in her
official capacity as Municipal Clerk
and Records Custodian for the
BOROUGH OF SADDLE RIVER,

 Defendants-Appellants.

_____

Argued December 11, 2019 – Decided January 27, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8197-18.

Russel R. Huntington and Levi Jon Kool argued the cause for appellants (Huntington Bailey, LLP, attorneys; Russel R. Huntington, of counsel and on the brief; Levi Jon Kool, on the brief).

Walter M. Luers argued the cause for respondent.

PER CURIAM

Defendants Borough of Saddle River and Joy Convertini, in her official capacity as Municipal Clerk and Records Custodian for the Borough of Saddle River, (collectively defendants) appeal from the January 7, 2019 order requiring defendants to disclose to plaintiff Doreen Frega the list of hunters participating in the deer cull implemented by the Borough and the list of addresses of public and private properties where the cull is authorized to take place, pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. Plaintiff is also one of the named plaintiffs in the separate, pending litigation, Animal Protection League of New Jersey v. Borough of Saddle River, Docket No. BER-L-006512-18.

Defendants argue the trial judge failed to give proper weight to the threats made by individuals who oppose the deer cull and disclosing the lists would invade the hunters' and property owners' reasonable expectation of privacy. We disagree and affirm substantially for the reasons expressed by Assignment Judge Bonnie J. Mizdol in her oral and written opinions.

In July 2018, the Borough implemented a Wildlife Management Plan establishing a controlled deer cull for public safety and health concerns. The Borough entered into a resolution authorizing the United Bowhunters of New

Jersey (UBNJ) "to provide deer management services" for one year "commencing with the 2018-2019 deer hunting season." The contract between the Borough and UBNJ provided that upon notifying the police of their full names, vehicle identifications, license plate numbers, and cell phone numbers, UBNJ members were authorized "to conduct a cull on various Borough properties and on certain private properties within the Borough, with permission of the property owner." These properties "must have been reviewed and approved by the Borough Administration, the Chief of Police and UBNJ."

In September 2018, plaintiff submitted a written OPRA request to the Borough seeking: (1) a list of hunters participating in the cull; (2) a map or list of public and private properties on which the cull is authorized to take place; and (3) audio recordings of two specific city council meetings. Convertini granted plaintiff access to the audio recordings, but denied her request for the list of hunters because "[n]o such documents exist," and the request for properties on "reasonable expectation of privacy" grounds under N.J.S.A. 47:1A-1.

In November 2018, Convertini sent plaintiff's counsel an amended and more detailed response to plaintiff's request, disclosing the location of one

Borough property being used for the cull and acknowledging that a list of hunters did in fact exist. Convertini continued to deny plaintiff access to the list, stating that pursuant to N.J.S.A. 47:1A-1 and Executive Order 21[1] "the records requested include personal identifiers," which, if disclosed, "would result in unsolicited contact, intrusion or potential harm." She explained that due to threats made against the supporters of the deer cull, the records should not be disclosed.

Defense counsel provided an excerpt from a council meeting where an unidentified man who opposed the deer cull stated: "You want to be ruthless assassins. I can be a ruthless assassin too. All right, because the Italians have a saying about that. The tongue—you know, it breaks bones. So I hope you sleep well." After being asked by the mayor, Albert Kurpis, whether he was threatening the governing body, he responded "absolutely not."

---

[1] "[B]efore OPRA went into effect, Governor McGreevy issued Executive Order 21 . . . [which] declared that 'an individual's home address and home telephone number . . . shall not be disclosed,' except under limited circumstances." Brennan v. Bergen Cty. Prosecutor's Office, 233 N.J. 330, 338 (2018). This provision was rescinded and a study was ordered to determine "to what extent [such information] should be made publicly available." Ibid. A report was eventually issued, "[b]ut neither the legislative nor the executive branch, by law or executive order . . . adopted the [report's] recommendations." Id. at 339.

A-2252-18T3

In addition, without publicly disclosing the names of the individuals who posted, defense counsel provided the following "posts" from Facebook:

> a. "That may be right Kurpis – you've had two lawsuits slapped on your town, your political career as well as most of your Council is destroyed and next your practice on Rt. 17 is going to take a major hit."
>
> b. "A torture chamber for those deer not yet dead! I'd sooner see Kurpis and the council hanging from the scaffold for their evil deeds. How does Dr. Death Kurpis live with himself??"
>
> c. "I hate our mayor and council . . . . They are sick and disgusting people . . . Now is the time to stop . . . . Everyone would like to beat the hell out of the entire bunch of them . . . they will get it back in spades. . . . Watch . . . . people are very upset . . . No reason for this killing . . . . How can Kurpis run a practice being such an evil man . . . ."
>
> d. "I pray they each are a victim of their own crime."[2]

Although plaintiff did not make these remarks or any other threatening comments, defendants note that several of her co-plaintiffs in the pending litigation were responsible for the statements.

We review "determinations about the applicability of OPRA and its exemptions" de novo. Carter v. Doe (In re N.J. Firemen's Ass'n Obligation),

---

[2] We reproduce this portion of counsel's certification as written.

 A-2252-18T3

230 N.J. 258, 273-74 (2017). "OPRA was 'designed to promote transparency in the operation of government.'" Id. at 276 (quoting Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012)). "[T]o ensure an informed citizenry and to minimize the evils inherent in a secluded process," the Legislature enacted OPRA with the purpose to provide the public with broad access to "government records," unless an exemption applies. Ibid. A "government record" is a document "made, maintained or kept on file in the course of . . . official business." N.J.S.A. 47:1A-1.1.

Of the over twenty exemptions listed in the statute, "OPRA does not contain a broad-based exception for the disclosure of names and home addresses that appear in government records." Brennan v. Bergen Cty. Prosecutor's Office, 233 N.J. 330, 338 (2018). The statute does impose a duty upon a public agency "to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1.

Upon reviewing OPRA's legislative history, our Supreme Court found that the statute's competing "aims—of ready access to government records and protection of a citizen's personal information—require a careful balancing of the" following factors:

(1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.

[Burnett v. County of Bergen, 198 N.J. 408, 427 (2009) (quoting Doe v. Poritz, 142 N.J. 1, 88 (1995)) (adopting the Doe factors originally applied to privacy interests under Megan's Law, N.J.S.A. 2C:7-1 to -11, to OPRA requests).]

The agency who denied the request has "the burden of proving that the denial of access is authorized by law," N.J.S.A. 47:1A-6, and "must first present a colorable claim that public access to records would invade a person's reasonable expectation of privacy," before performing the Doe balancing test, Brennan, 233 N.J. at 333.

Defendants argue that the judge should have given more weight to the threats the supporters of the deer cull received. They explain that when denying plaintiff's request, they determined "the disclosure of the records would almost inevitably result in harm to . . . citizens" who participated in the cull, and therefore the participants' and property owners' reasonable

expectation of privacy "substantially outweighed" plaintiff's interest in the information.

When an agency denies a request to disclose government records, it "must present 'specific reliable evidence sufficient to meet a statutorily recognized basis for confidentiality.'" Carter, 230 N.J. at 277 (quoting Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 382-83 (App. Div. 2003)). "Absent such [specific reliable evidence], a citizen's right of access is unfettered." Ibid. (alteration in original) (quoting Courier News, 358 N.J. Super. at 383).

In Brennan, defendants denied plaintiff's request for the names and addresses of successful bidders who participated in a public auction of government property due to privacy concerns. Brennan, 233 N.J. at 332. Our Supreme Court held that because "[t]he bidders knew that they were participating in a public auction . . . . And the participants knew that they were bidding on seized property forfeited to the government," a reasonable expectation of privacy did not exist. Id. at 342-43. The Court explained that "it was unreasonable for a buyer to expect that the information requested would remain private" since "a public auction is a quintessential public event that calls for transparency." Id. at 343. Furthermore, the concern that

disclosure of the names and addresses would make the bidders targets of theft was too speculative.  Ibid.

Just like "the public has a right to know what property was sold, at what price, and to whom, " ibid., the public has a right to know who has volunteered to participate in the deer cull and where the deer cull is authorized to take place, especially considering what the judge described as "the dangers inherent in a cull."  By way of example, Judge Mizdol noted that "a parent with children has the right to know if hunters will be operating powerful crossbows on a neighbor's property."

Judge Mizdol correctly found that "[j]ust as . . . Brennan determined that it is not reasonable for bidders at a public auction to expect their information remain private, property owners and [hunters] voluntarily partaking in a public deer hunt cannot establish a colorable claim of privacy."

While the judge made mention of the Doe factors in her opinion, she did not provide an extended analysis of those factors because defendants failed to present a colorable claim of privacy.  Although we agree that no privacy claim was substantiated by specific reliable evidence, we will briefly review the Doe factors.  No dispute exists regarding the type of record and the information contained, the first two Doe factors.  Plaintiff requested a list of the hunters

participating in the cull and a list of properties where it would take place. These lists qualify as government records because they were "made, maintained or kept on file in the course of . . . business by any . . . authority of the State." N.J.S.A. 47:1A-1.1.

The third and fourth Doe factors "address the potential for harm from disclosure." Burnett, 198 N.J. at 431. Although plaintiff did not make any threatening remarks, defendants argue that because alleged threats were made by plaintiff's co-plaintiffs in pending litigation, "there is a potential for harm." The risk of harm that the disclosure to the plaintiff will result in violence based on the threats made at the council meeting and on Facebook is as speculative as the risk of theft expressed by the defendants in Brennan. Defendants also argue disclosure "would potentially chill residents and hunters from participating in the program . . . resulting in an increase in an already significant public health crisis." Neither here nor in Brennan did the defendants support their risk of harm claims with any evidence.

When affirming the redaction of social security numbers from a plaintiff's request to access land title records, our Supreme Court held that such numbers are unique identifiers, which if disclosed could result in "alarming and potentially financially ruinous" harm, as supported by statistical

evidence. Burnett, 198 N.J. at 431-32 (quoting Greidinger v. Davis, 988 F.2d 1344, 1354-55 (4th Cir. 1993)). With regard to financial assistance applications, our Supreme Court similarly explained that because "the potential harm that could be created by the release of this information is unlimited," such information need not be disclosed. Carter, 230 N.J. at 280.

Judge Mizdol explained that the purported threats here were "simply hyperbolic expressions of animosity toward the practice of hunting." Furthermore, defendants' argument that disclosure would cause participants to withdraw from the program is not supported by any evidence. As plaintiff notes in her brief, the florid language was "directed at the governing body, not at [the] hunters or residents" partaking in the cull.

As to the fifth Doe factor assessing the safeguards to prevent unauthorized disclosure, unlike a social security number or perhaps a birth date, a name and address is not generally recognized as confidential information. No promise of confidentiality was made by the Borough in its resolution to implement the cull nor its contract with the UBNJ. Thus, concerns about unauthorized disclosure are minimal.

The final two factors examine the need for access and look at whether a statutory mandate or public policy requires disclosure. The purpose of an

OPRA request is not considered unless "legitimate privacy concerns exist that require a balancing of interests and consideration of the need for access." Burnett, 198 N.J. at 435. A court may then ask whether "disclosure will further the core purposes of OPRA: 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Ibid. (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)). Plaintiff discusses in her brief that such information will inform her "about the efficacy of the deer cull or the risks . . . [w]ithout [which] . . . [she] cannot meaningfully address these issues in the public domain." OPRA's purpose favors disclosure, regardless of whether plaintiff could achieve her goal through different means.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Defendants rely on various decisions by the Government Record Council (GRC), which "has routinely recognized that names and home addresses may be exempt from disclosure" where access to such information may result in unsolicited contact or potential harm. OPRA expressly states that "[a] decision of the [GRC] shall not have value as a precedent for any case initiated in Superior Court." N.J.S.A. 47:1A-7(e). Only when a case is directly appealed from the GRC, do we give deference to GRC decisions. Paff v. Galloway, 229 N.J. 340, 356 n.7 (2017).

A-2252-18T3