SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## Libertarians for Transparent Government v. Cumberland County
### (A-34-20) (084956)

**Argued September 14, 2021 -- Decided March 7, 2022**

**RABNER, C.J., writing for a unanimous Court.**

In this appeal, plaintiff Libertarians for Transparent Government seeks a copy of a settlement agreement between a former corrections officer and his employer, defendant Cumberland County. The Court considers whether the agreement should be turned over under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

In October 2017, a woman incarcerated at the Cumberland County Jail filed a lawsuit against the County and several corrections officers, including Tyrone Ellis, alleging she had been forced to engage in non-consensual sex acts on a regular basis.

To learn more about the allegations, Libertarians obtained minutes of the public meeting of the Board of the Police and Firemen's Retirement System at which the Board considered Ellis's application for special retirement. According to the minutes, the County originally sought to terminate Ellis, who had been charged with a disciplinary infraction. When he submitted his resignation, the County warned that it intended to continue to prosecute the disciplinary matter. Ellis, in turn, "agreed to cooperate" with the County's investigation of four other officers suspected of similar misconduct. "As a result of his cooperation, Cumberland County agreed to dismiss the disciplinary charges and permit Mr. Ellis to retire in good standing" with a reduced pension.

Libertarians sent the County an OPRA request seeking, as relevant here, the settlement agreement and Ellis's "'name, title, position, salary, length of service, date of separation and the reason therefor' in accordance with N.J.S.A. 47:1A-10." The County declined to produce the settlement agreement, claiming it was a personnel record exempt from disclosure. In response to the request for information, the County stated in part that "Officer Ellis was charged with a disciplinary infraction and was terminated."

Libertarians filed a complaint in Superior Court, and the trial court ordered the County to provide a redacted version of the settlement agreement. The County appealed, and the Appellate Division reversed the trial court's judgment. 465 N.J. Super. 11, 13 (App. Div. 2020). The Court granted certification. 245 N.J. 38 (2021).

1

**HELD:** Most personnel records are confidential under OPRA. But under the law's plain language, certain items qualify as a government record including a person's name, title, "date of separation and the reason therefor." N.J.S.A. 47:1A-10. To the extent that information appears in a settlement agreement, the record should be available to the public after appropriate redactions are made.

1. Under OPRA, "all government records shall be subject to public access unless exempt." N.J.S.A. 47:1A-1. The statute calls for a careful balancing of the right of access to government records versus the need to protect personal information, and it permits targeted redactions of information that should not be disclosed. See id. at -5(g). Section 10 of OPRA addresses personnel records. Id. at -10. Most are exempt from disclosure under the law, but the statute has three exceptions. Ibid. (pp. 11-12)

2. This appeal turns on the first exception, under which "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record." Ibid. A plain reading of section 10 calls for disclosure of a settlement agreement that contains such information once the document has been redacted. (pp. 12-14)

3. In Kovalcik v. Somerset County Prosecutor's Office, the Court determined that, if information within requested personnel records did not fall under section 10's third exception, it should be redacted, but that the redacted records themselves should be disclosed. 206 N.J. 581, 585-86, 593-95 (2011). Here, part of the settlement agreement that Libertarians seeks contains information covered by section 10's first exception, and as in Kovalcik, the document is subject to disclosure after it is redacted. Details that are not listed in the exception but constitute personnel records would still be exempt from disclosure. Some requestors may be satisfied with a written summary of information, but OPRA entitles them to press for actual records in many situations. (pp. 14-17)

4. Under section 10, the reasons Ellis separated from government service qualify as a "government record." A settlement agreement that includes those details must therefore be made available to the public once it is redacted. OPRA enables the public to play a role in guarding against corruption and misconduct. Here, the County stated that Ellis was terminated. In reality, he was allowed to retire in good standing with only a partial pension forfeiture. Without access to actual documents in cases like this, the public can be left with incomplete or incorrect information. Libertarians is entitled to a redacted version of the actual settlement document, and the trial court's award of attorney's fees to Libertarians as the prevailing party under N.J.S.A. 47:1A-6 is reinstated. (pp. 17-19)

**The judgment of the Appellate Division is REVERSED.**

**JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion.**

SUPREME COURT OF NEW JERSEY

A-34 September Term 2020

084956

Libertarians for Transparent Government,
a NJ Nonprofit Corporation,

Plaintiff-Appellant,

v.

Cumberland County and Blake Hetherington
in her official capacity as
Custodian of Records for Cumberland County,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
465 N.J. Super. 11 (App. Div. 2020).

| Argued | Decided |
|---|---|
| September 14, 2021 | March 7, 2022 |

CJ Griffin argued the cause for appellant (Pashman Stein
Walder Hayden, attorneys; CJ Griffin, of counsel and on
the briefs).

Jeffrey P. Sarvas argued the cause for respondents
(Barker, Gelfand, James & Sarvas, attorneys; Jeffrey P.
Sarvas, and Vanessa E. James, on the briefs).

Alexander Shalom argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation,
attorneys; Alexander Shalom, Jeanne LoCicero, and Julia

T. Bradley, of the New York bar, practicing pursuant to R. 1-21-3(c), on the brief).

Bruce S. Rosen submitted a brief on behalf of amici curiae Reporters Committee for Freedom of the Press; Advance Publications, Inc.; The Associated Press; The Atlantic Monthly Group LLC; The Center for Investigative Reporting; Gannett; The Media Institute; The National Freedom of Information Coalition; National Journal Group LLC; NBCUniversal Media LLC; The New Jersey Press Association; Radio Television Digital News Association; Society of Professional Journalists; and The Tully Center for Free Speech (McCusker, Anselmi, Rosen, & Carvelli, attorneys; Bruce S. Rosen, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this appeal, plaintiff Libertarians for Transparent Government seeks a copy of a settlement agreement between a former corrections officer and his employer, defendant Cumberland County.

In a separate lawsuit, an inmate at the Cumberland County Jail accused the corrections officer of forcing her to engage in non-consensual sex acts in prison. Libertarians learned that the officer had been accused in a disciplinary action of "improper fraternization" with two female inmates and bringing contraband into the jail. He admitted the misconduct and entered into a settlement agreement with the County.

Relying on the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, Libertarians asked the County for the actual settlement agreement. The County declined to turn it over on the ground that it was a personnel record. Instead, the County provided certain details in writing and stated, in particular, that the officer had been "charged with a disciplinary infraction and was terminated." That was not true. The officer was allowed to retire in good standing and collect a partly reduced pension.

Most personnel records are confidential under OPRA. But under the law's plain language, certain items qualify as a government record including a person's name, title, "date of separation and the reason therefor." Id. § 10. To the extent that information appears in a settlement agreement, the record should be available to the public after appropriate redactions are made.

In this case, the trial court properly ordered disclosure of a redacted settlement agreement, and the Appellate Division reversed. We reinstate the trial court's order.

I.

In October 2017, a woman incarcerated at the Cumberland County Jail filed a federal lawsuit against the County and several corrections officers, including Tyrone Ellis. Among other things, she alleged that Ellis and other officers forced her to engage in non-consensual sex acts on a regular basis.

3

To learn more about the allegations, Libertarians obtained minutes of the March 18, 2018 public meeting of the Board of the Police and Firemen's Retirement System. At the meeting, the Board considered Ellis's application for special retirement.

The minutes revealed that Ellis had been charged in a Preliminary Notice of Disciplinary Action (PNDA), dated August 23, 2016, "with conduct unbecoming . . . related to alleged improper fraternization with inmates and introduction of contraband into the facility." Ellis admitted he had "inappropriate relationships with two inmates" and brought contraband into the jail. He did not dispute that he had brought bras, underwear, cigarettes, and a cell phone into the prison.

According to the minutes, the County originally sought to terminate Ellis. When he submitted his resignation, the County warned that it intended to continue to prosecute the disciplinary matter. Ellis, in turn, "agreed to cooperate" with the County's investigation of four other officers suspected of similar misconduct. "As a result of his cooperation, Cumberland County agreed to dismiss the disciplinary charges and permit Mr. Ellis to retire in good standing." As part of a settlement agreement dated March 1, 2017, "all charges listed on the PNDA were withdrawn."

The minutes also noted that Ellis had served as a corrections officer for twenty-five years and six months. Because his "misconduct reflected multiple offenses over an extended period of time and was directly related to his duties as a County Correction Officer," the Board "reduced his service and salary to 20 years, the requisite service credit to qualify for a Service retirement." In other words, Ellis retired in good standing, and the Board allowed him to receive a reduced pension.

Libertarians sent the County an OPRA request on July 24, 2018. It asked for three things: the PNDA; the settlement agreement; and Ellis's "'name, title, position, salary, length of service, date of separation and the reason therefor' in accordance with N.J.S.A. 47:1A-10."

The County declined to produce the PNDA and the settlement agreement, claiming they were personnel records the law exempts from disclosure. As for the third item, the County stated in an email that

> Officer Ellis was charged with a disciplinary infraction and was terminated. His title was as a Corrections Officer. His yearly salary was $71,575. His date of hire was March 6, 1991. His date of separation was February 28, 2017. As indicated above, the reason for the separation was a disciplinary infraction.
>
> [(emphasis added).]

The County did not provide redacted versions of the PNDA or the settlement agreement.

5

Libertarians then filed a complaint in Superior Court. The complaint sought access to the settlement agreement under OPRA and the common law right of access but did not seek a copy of the PNDA. Libertarians asserted that the County "misrepresent[ed] the 'reason' for Ellis's separation from public employment" and withheld a government record that should have been disclosed. In the alternative, Libertarians asked the court to review the record in camera and release it in redacted form. The County maintained the settlement agreement was an exempt personnel record, and that "confidentiality" relating "to the continuing investigation of disciplinary infractions" was "also important."

The trial court ordered the County to provide a redacted version of the settlement agreement. The court found the agreement was "a government record subject to disclosure under OPRA," not a personnel record exempt from disclosure. After an in camera review of the document, the court heavily redacted it and removed parts that referred to Ellis's cooperation with the County Prosecutor and his disciplinary infractions. The court also noted that OPRA's exemption for records of ongoing investigations did not apply, see N.J.S.A. 47:1A-3(a), and that the County "violated OPRA by misrepresenting the reason for Ellis's separation" from employment.

Because the trial court granted access to the settlement agreement under OPRA, it did not address the common law right of access. The court awarded Libertarians attorney's fees as the prevailing party under N.J.S.A. 47:1A-6; the parties consented to the amount of the fees, subject to appeal.

The County appealed, and the Appellate Division reversed the trial court's judgment. Libertarians for Transparent Gov't v. Cumberland County, 465 N.J. Super. 11, 13 (App. Div. 2020). The court held that "a settlement agreement resolving an internal disciplinary action against a public employee is not classified as a government record under OPRA, but instead is a personnel record exempt from disclosure under section 10 of the statute."[1] Ibid. The court found such records differed from "[s]ettlement agreements by public agencies to resolve civil suits," which "are accessible under OPRA." Id. at 23.

The Appellate Division recognized that although section 10 of OPRA exempts personnel records from disclosure, it also contains an exception for

[1] As discussed in more detail later, N.J.S.A. 47:1A-10 (section 10) states that personnel records are not "considered . . . government record[s] and shall not be made available for public access." The section also contains three exceptions; the first declares that "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record." Ibid.

7

certain information Libertarians had requested in this case. Id. at 24. Nonetheless, although the court "acknowledge[d] the matter is not altogether free from doubt," it "conclude[d] OPRA does not generally require government agencies to make exempt personnel and pension records accessible in redacted form." Ibid. "[T]he mention of an employee's name . . . [and] date and reason of separation . . . does not make that document a government record publicly accessible under OPRA, redacted to exclude all other information." Id. at 28.

The court recognized, however, that allowing agencies to provide information rather than actual documents requires "trust [in] what the government" reveals -- a "problem" that "is well-illustrated" by the County's response to Libertarians' request. Id. at 29.

The Appellate Division remanded the matter to the trial court to determine whether the settlement agreement should be disclosed under the common law right of access. Id. at 31. The court also reversed the order for fees. Ibid.

We granted Libertarians' petition for certification. 245 N.J. 38 (2021). We also granted leave to appear as amici curiae to the Reporters Committee for Freedom of the Press along with thirteen media organizations (Reporters Committee) and the American Civil Liberties Union of New Jersey (ACLU).

8

II.

Libertarians urges the Court to reinstate the trial court's ruling. It asserts it is entitled to a redacted version of the settlement agreement based on two exceptions in section 10. Libertarians argues that Ellis's "name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received" is a government record. The statute's plain language, according to Libertarians, required the County to disclose the settlement agreement with redactions, and not just a summary of the information. Libertarians also contends that because public entities must provide immediate access to individual employment contracts under section 5(e) of OPRA, and because an agreement ending Ellis's employment qualifies as an employment contract, the settlement agreement must be disclosed under another part of section 10. Libertarians stresses that the outcome of this case will have far-reaching consequences for transparency in policing and sexual abuse in jails.

The Reporters Committee and the ACLU support Libertarians' position. The Committee emphasizes OPRA's mandate to "segregate" or redact exempt parts of a government record from public access while still allowing access to the record itself. The Committee also argues that public records laws like

9

OPRA advance the public interest by enabling journalists to report on the conduct of public institutions and employees.

The ACLU highlights the importance of transparency in corrections facilities, where it contends abuse is rampant and underreported. Public access to settlement agreements, the organization asserts, will help curb abuse by creating accountability.

Cumberland County argues the judgment of the Appellate Division should be affirmed. The County contends that just because Libertarians is entitled to certain information under section 10, it is not entitled to disclosure of the settlement agreement itself, which is an exempt personnel record. An overly broad reading of the exception in section 10, according to the County, would swallow the general rule protecting personnel records from public access. The County also maintains that the agreement is not an "individual employment contract" subject to disclosure under section 5(e).

In addition, the County submits that OPRA protects important privacy interests of employees and does not substantially impede the public's interest in access and transparency.

III.

A.

This appeal involves the interpretation of a statute. To understand the meaning of the Open Public Records Act, we look for the Legislature's intent. See DiProspero v. Penn, 183 N.J. 477, 492-93 (2005). We begin with the text of the statute because the language the Legislature chooses is "generally . . . the best indicator of [its] intent." Id. at 492.

OPRA is designed to provide the public with "ready access to government records." Burnett v. County of Bergen, 198 N.J. 408, 421 (2009). The law declares at the outset that "all government records shall be subject to public access unless exempt." N.J.S.A. 47:1A-1. Plus "any limitations on the right of access . . . shall be construed in favor of the public's right of access." Ibid.

The statute broadly defines the term "government record." The phrase includes any documents "made, maintained or kept on file in the course of . . . official [government] business." Id. § 1.1. In the same section, OPRA exempts more than twenty different types of information from the definition. Ibid. None of them apply here.

OPRA also calls for a careful balancing of competing interests -- the right of access to government records versus the need to protect personal

information.  Burnett, 198 N.J. at 414.  One way to achieve that balance is through targeted redactions of information that should not be disclosed.  More generally, if part of a record is exempt from public access, the records custodian is authorized to redact that portion of the document and must then "promptly permit access to the remainder of the record."  N.J.S.A. 47:1A-5(g).

Section 10 of OPRA addresses personnel records.  Most personnel records are exempt from disclosure under the law, but the statute has three exceptions.  Section 10 reads as follows:

> Notwithstanding the provisions of L. 1963, c. 73 ([N.J.S.A.] 47:1A-1 et seq.) or any other law to the contrary, the personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access, except that:
>
> [1] an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record;
>
> [2] personnel or pension records of any individual shall be accessible when required to be disclosed by another law, when disclosure is essential to the performance of official duties of a person duly authorized by this State or the United States, or when authorized by an individual in interest; and
>
> [3] data contained in information which disclose conformity with specific experiential, educational or medical qualifications required for government

12

employment or for receipt of a public pension, but not including any detailed medical or psychological information, shall be a government record.

[(emphases added).]

This appeal turns on the first exception.

In 1974, Governor Byrne issued Executive Order 11, which mirrors section 10. Exec. Order No. 11 (EO 11) (Nov. 15, 1974), 1 Laws of New Jersey 1974 765. EO 11 exempted personnel records from disclosure under the Right to Know Law, which preceded OPRA. Like OPRA, the executive order contained language that parallels section 10 and provided that an individual's name, date of separation from government service, reasons for separation, and other details "shall be public." Ibid.

## B.

We review questions of statutory interpretation de novo. See Brennan v. Bergen Cnty. Prosecutor's Off., 233 N.J. 330, 339 (2018). Our analysis here is tethered to the language of the statute.

Public agencies have an obligation to disclose "government records." N.J.S.A. 47:1A-1. And under OPRA, the records themselves -- and not a summary -- must be made available "for inspection, copying, or examination." Ibid. Custodians, however, must redact parts of a document that are exempt from public access before disclosing a government record. Id. § 5(g).

13

Section 10 expressly states that a person's "date of separation" from employment "and the reason therefor . . . shall be a government record." Id. § 10. As a result, a plain reading of the text calls for disclosure of a settlement agreement that contains such information once the document has been redacted.

Section 10 can also be analyzed in a more nuanced way that leads to the same outcome. The provision exempts personnel records, including records relating to a grievance, from disclosure. Ibid. Yet section 10 also provides an exception to that exemption by declaring that a person's "date of separation and the reason therefor," along with certain other details, constitute a "government record." Ibid. Either way, records that contain those details, kept by a public agency, must be made available for inspection with appropriate redactions.

This is not the first time the Court has interpreted an exception in section 10. In Kovalcik v. Somerset County Prosecutor's Office, for example, the Court considered the third exception. 206 N.J. 581 (2011). In that case, Kovalcik sought copies of curricula vitae for two detectives, "as well as a list of any courses relating to interrogation and confessions" they had taken. Id. at 584. The prosecutor's office argued the documents were exempt from

14

disclosure as personnel records under section 10 as well as another ground not relevant here.  Id. at 585-86.

In its review of the third exception in section 10, the Court explained the exception "narrow[s] the mandate of disclosure" to "a specific, or particular, educational qualification that is a prerequisite" for a government position "and only if the record demonstrates compliance with that specific requirement is it subject to being disclosed pursuant to OPRA."  Id. at 593 (emphasis added). Under the statute's plain language, the Court observed, a "document in dispute can only be found to be within the exception to the exemption if it discloses, and only to the extent that it discloses, that [a detective] had completed specific training or education that was required for her employment . . . with the Prosecutor's Office."  Id. at 593-94 (emphasis added).

Because the Court could not tell from the record whether the document fell within the exception, it remanded the matter to the trial court "to apply the statute in accordance with the analysis [it] set forth."  Id. at 594-95.  From the Court's analysis and instructions, this much is clear:  if the document contained information that brought it within the third exception, OPRA called for its disclosure after any appropriate redactions.  See also S. Jersey Publ'g Co. v. Expressway Auth., 124 N.J. 478, 495-96 (1991) (finding that the exemption for personnel records in EO 11 did not prevent the release of

15

minutes that "undoubtedly include the reasons for . . . termination of employment").

In this appeal, part of the settlement agreement that Libertarians seeks contains information covered by section 10's first exception. For similar reasons, the document is subject to disclosure after it is redacted.

Our reading of section 10 does not render parts of it superfluous. The first exception, for example, lists specific details that must be disclosed: a person's name, title, position, salary, payroll record, length of service, date of separation, the reason therefor, and the amount and type of the individual's pension. N.J.S.A. 47:1A-10. Other details that are not listed in the exception but constitute personnel records would still be exempt from disclosure.

Other OPRA exemptions raised by the County do not prevent disclosure either. OPRA safeguards an individual's personal information when disclosure would violate a person's reasonable expectation of privacy. Id. § 1. Section 10, once again, specifically calls for the release of the information sought here, and any additional exempt or confidential information would be subject to redaction. Because there is no colorable claim of privacy on this record, there is no need to apply the balancing test set forth in Burnett. See Brennan, 233

N.J. at 333. No reasonable claim of privacy can justify withholding Ellis's settlement agreement from disclosure.[2]

We recognize that some requestors may be satisfied to receive a written summary of information in response to an OPRA request. But OPRA entitles them to press for actual government records in many situations, which they can then inspect.

The Legislature acknowledged the distinction between providing information and actual records in different settings. The statute, for example, directs that certain "information" about ongoing criminal investigations shall be made available to the public. Id. § 3(b) (emphasis added). Elsewhere, the Legislature directs that "government records," as opposed to information, be disclosed. Id. § 1.

Under section 10, the reasons Ellis separated from government service qualify as a "government record." A settlement agreement that includes those details must therefore be made available to the public once it is redacted.[3]

---

[2] The County no longer argues that OPRA's exemption for access to records of investigations in progress applies. See N.J.S.A. 47:1A-3.

[3] Libertarians does not argue or suggest that every personnel document with a person's name or title in it must be available for inspection -- with all but those details redacted -- under the plain language of section 10's first exception. If faced with that position in another case, courts could readily address it. See Bozzi v. City of Jersey City, 248 N.J. 274, 283 (2021) (noting that courts can

17

In deciding this appeal, we do not rely on case law about settlement agreements that public entities enter into to resolve a lawsuit. See Asbury Park Press v. County of Monmouth, 406 N.J. Super. 1, 9 (App. Div. 2009) (noting that the public has a "right to know the business of the courts" and "a right of access to court documents filed in civil lawsuits"), aff'd, 201 N.J. 5 (2010). Nor do we reach plaintiff's and the ACLU's argument that a settlement agreement ending a person's employment is an "employment contract," which an agency must grant "[i]mmediate access" to under section 5(e). We begin and end our analysis with the plain language of section 10 discussed above. Our reading of that section comports with OPRA's command to construe the statute "in favor of the public's right of access." N.J.S.A. 47:1A-1.

OPRA enables the public to play a role in "guarding against corruption and misconduct." Burnett, 198 N.J. at 414. This case underscores those principles. In response to plaintiff's OPRA request, the County stated that Ellis was terminated because of his misconduct as a corrections officer. The trial judge, who reviewed the settlement agreement in camera, called the statement a misrepresentation. In reality, according to the minutes of the

---

look to extrinsic evidence if a statute's plain language would lead to an absurd result); DiProspero, 183 N.J. at 493 (same).

18

Retirement Board, after Ellis admitted that he had "inappropriate relationships with two inmates," he was allowed to retire in good standing with only a partial forfeiture of his pension. Without access to actual documents in cases like this, the public can be left with incomplete or incorrect information.

"[G]overnment works best when its activities are well-known to the public it serves." Ibid. In that regard, access to public records fosters transparency, accountability, and candor. That applies to questions about sexual abuse in prison as well as the overall operation of prison facilities and other aspects of government.

Libertarians was and is entitled to a redacted version of the actual settlement document.

## C.

The trial judge awarded attorney's fees to Libertarians as the prevailing party under N.J.S.A. 47:1A-6. Afterward, the parties agreed on the amount of counsel fees. The trial court's order, reversed on appeal, is reinstated.

We do not consider the scope of the redactions the trial judge approved, which the parties did not appeal.

## IV.

For the reasons set forth above, we reverse the judgment of the Appellate Division.

19

JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion.