NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4742-17T4
               A-4743-17T4

ERNEST BOZZI,

      Plaintiff-Appellant,

v.

BOROUGH OF ROSELLE
PARK, and ANDREW
CASAIS, CLERK,

      Defendants-Respondents.

_____

ERNEST BOZZI,

      Plaintiff-Appellant,

v.

CITY OF SUMMIT, and
ROSEMARY LICATESE,
CITY CLERK,

      Defendants-Respondents.

_____

<table>
<tr><td>

**APPROVED FOR PUBLICATION**

**February 21, 2020**

**APPELLATE DIVISION**

</td></tr>
</table>

Argued October 21, 2019 – Decided February 21, 2020

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket Nos. L-1046-18 and L-0543-18.

Donald Michael Doherty, Jr., argued the cause for appellant.

Jarrid H. Kantor argued the cause for respondents Borough of Roselle Park and Andrew Casais, Clerk (Antonelli Kantor, PC, attorneys; Jarrid H. Kantor, of counsel and on the brief; Daniel H. Kline, on the brief).

Bradley David Tishman argued the cause for respondents City of Summit and Rosemary Licatese, City Clerk (Cleary Giacobbe Alfieri & Jacobs, LLC, attorneys; Matthew J. Giacobbe and Bradley David Tishman, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., J.A.D.

The matter before us concerns two consolidated appeals, calendared back-to-back for the purposes of this single opinion, both brought by plaintiff Ernest Bozzi who seeks access to names and addresses on dog license records issued by defendants City of Summit and the Borough of Roselle Park (collectively "the municipalities"). Plaintiff claimed he was entitled to the information under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access to public records. The municipalities separately denied plaintiff's requests, so plaintiff filed complaints in the Law Division to obtain

2

A-4742-17T4

the information. The trial court determined plaintiff was not entitled to the information because his sole purpose was to solicit dog licensees to install invisible fences at their homes.

Before us, plaintiff contends the names and addresses in dog license records are available to him under both OPRA and common law because they are public records in which the licensees have no, or an insufficient, expectation of privacy in the information. We agree with his OPRA argument and reverse. We do not reach plaintiff's common law argument.

I.

In accordance with N.J.S.A. 4:19-15.2 and -15.2(a), dog owners shall apply for a dog license from the municipal clerk where they reside. N.J.S.A. 4:19-15.5 details the information an applicant must provide. In pertinent part, the statute states:

> The application shall state the breed, sex, age, color and markings of the dog for which license and registration are sought, whether it is of a long- or short-haired variety, and whether it has been surgically debarked or silenced; also the name, street and post-office address of the owner and the person who shall keep or harbor such dog. The information on the application and the registration number issued for the dog shall be preserved for a period of three years by the clerk or other local official designated to license dogs in the municipality.

[N.J.S.A. 4:19-15.5.]

Plaintiff is a licensed home improvement contractor who runs a business installing invisible fences for dog owners.[1] On January 26, 2018, he filed OPRA requests with the municipal clerks of both Summit and Roselle Park seeking copies of the municipalities' dog license records in order to solicit dog owners to purchase invisible fences for their homes. His requests stated:

> I am requesting copies of your most recent dog license records that you have.
>
> You may redact
> . . . the breed/type of dog
> . . . the name of the dog
> . . . any information about why someone has the dog (comfort animal, handicap assistance, law enforcement of any other reason) if that information is in the record
> . . . any phone numbers whether unlisted or not.
>
> I am trying to get the names and addresses of dog owners for our invisible fence installations (we are a licensed home improvement contractor) and I allow you to remove any information beyond that so there are no

_____

[1] An Invisible Fence is a trademark that is becoming genericized as people regularly use it to refer to radio-signaled barrier systems dog owners can install to keep their dogs on their property without erecting a traditional fence. Invisible fences transmit radio signals to a receiver collar worn by a dog. When the collar gets within range of the boundary, it first emits a warning tone audible to the dog, then if the dog continues to cross the boundary, it signals the collar to cause a static shock. Kyle Schurman, Three best invisible fences, CHICAGO TRIBUNE (Nov. 19, 2018), https://www.chicagotribune.com/sns-pets-three-best-invisible-fences-bestreviews-20181119-story.html.

A-4742-17T4

privacy concerns as determined by the Government Records Council [GRC] in <u>Bernstein v. Allendale</u>.[2]

On February 2, Summit's City Clerk denied plaintiff's request, citing the GRC's final decision in <u>Bernstein v. Allendale</u>. This decision was one of five rulings rendered by the GRC the same day involving the same complainant, Rich Bernstein, in which OPRA requests for dog license records were denied. The others were <u>Bernstein v. Borough of Woodcliff Lake</u>, GRC Complaint No. 2005-02 (July 14, 2005); <u>Bernstein v. Borough of Harrington Park</u>, GRC Complaint No. 2005-06 (July 14, 2005); <u>Bernstein v. Borough of Ho Ho Kus</u>, GRC Complaint No. 2005-13 (July 14, 2005); and <u>Bernstein v. Borough of Park Ridge</u>, GRC Complaint No. 2005-99 (July 14, 2005). Because the decisions involve the exact same issue – OPRA requests for dog license records in order to sell invisible fences to the dog license holders – resulting in the same factual findings and legal conclusions, unless noted otherwise, we will refer to them collectively as the "<u>Bernstein</u> rulings."

Four days later, Roselle Park's Clerk denied the request because of "privacy" concerns and "Executive Order 21."[3]

---

[2] <u>Bernstein v. Borough of Allendale</u>, GRC Complaint No. 2004–195 (July 14, 2005).

[3] <u>Exec. Order No. 21</u> (July 5, 2002), 34 N.J.R. 2487(a) (Aug. 5, 2002).

In response to the denials of his requests, plaintiff sought relief in the Law Division. He initially filed a complaint against Summit and its City Clerk seeking the dog license records under OPRA and common law.[4] This was shortly followed by the filing of a similar complaint against Roselle Park and its Clerk. In both matters, the trial court issued orders to show cause requiring the municipalities to explain why plaintiff was not entitled to the requested records, counsel fees, and the costs of suit.

On May 7, at the conclusion of oral argument, the trial court agreed with the municipalities' decisions not to disclose the dog license records based upon OPRA's privacy provision, N.J.S.A. 47:1A-1. The court maintained the licensees did not expect their "personal information . . . [,] provided in order to comply with law[, to be given] to someone who is using it . . . to solicit them for something else." The court believed this constituted a substantial injury to the licensees' relationship with their municipal government such that "it would encourage people to not comply with the law." The court explained:

> [T]o use OPRA for this commercial purpose against the privacy interests of citizens who are complying with the law and paying a fee, giving over that information because they must. Not because they want to, but

---

[4] OPRA gives a person who is denied access to public records the option to file a complaint in court or with the GRC to adjudicate the dispute. N.J.S.A. 47:1A-6.

A-4742-17T4

> because they must or because -- not because they've
> been given a ticket or want to build a house. They just
> simply want to own a dog. I think the privacy interest
> is greater than [plaintiff]'s need to have this to have - to
> have the government do its -- do his targeting marketing
> for him -- market research for him.

The court referred to the Bernstein rulings but did not specifically cite them in support of its ruling. The court also pointed out Chief Justice Rabner, writing for the Court in Burnett v. Cty. of Bergen, 198 N.J. 408 (2009), mentioned one of the Bernstein rulings. The court stated: "Now, [Chief Justice Rabner] cites [Bernstein v. Boro of Park Ridge Custodian of Records, GRC Complaint No. 2005–99 (July 14, 2005)]. He notes it. He doesn't say it's wrong. And perhaps he wasn't necessarily focusing on that, but he certainly had done the research and seen that." The court did not make a ruling on plaintiff's common law claim. These appeals ensued.[5]

## II.

Plaintiff maintains the municipalities' reliance on the Bernstein rulings is misplaced for several reasons. They are not controlling because OPRA

---

[5] This court granted plaintiffs' motion to consolidate the separately filed appeals.

specifically states that "a decision of the [GRC] shall not have value as a precedent for any case initiated in the Superior Court . . . ." N.J.S.A. 47:1A-7(e). Plaintiff contends the rulings, rendered in July 2005, incorrectly: (1) relied on the previously rescinded paragraph three of Exec. Order 21 (July 5, 2002), 34 N.J.R. 2487(a) (Aug. 5, 2002); (2) misapplied the then controlling decision on privacy – Higg-A-Rella v. Essex, 141 N.J. 35, 49 (1995) (holding there is no privacy interest in names and addresses in public records that would prevent disclosure under the common law); and (3) erred in applying Doe v. Poritz, 142 N.J. 1, 79, 82 (1995) (ruling there was no "privacy interest" in keeping the public from learning the names and addresses of those on the registered list of sex offenders).[6]

Plaintiff argues that under Brennan v. Bergen Cty. Prosecutor's Office, 233 N.J. 330, 342 (2018), there is no need to consider the Doe factors because his request for dog license records does not seek information that "a person has an objectively reasonable expectation of privacy in or normally has a justifiable basis to keep from the world." Plaintiff argues a record of dog ownership "is

---

[6] Plaintiff also relies upon the "logic" of this court's unpublished decisions to support his position that he is entitled to the requested records. Because they have no precedential value, we do not address them. R. 1:36-3

not a significant personal identifier" that imposes a realistic risk of harm.[7] Plaintiff relies on the Court's recognition that in OPRA "the Legislature has chosen to prevent disclosure of home addresses in select situations. Aside from those particular exemptions, however, OPRA does not contain a broad-based exception for the disclosure of names and home addresses that appear in government records." Id. at 338. He furthers contends the court also misapplied the Doe factors in denying his request.[8]

---

[7] We see no merit to the self-serving remarks made by plaintiff's counsel at argument before the trial court that he felt no risk of harm by stating his name, address, and his dog's name in open court.

[8] Plaintiff also argues Roselle Park's denial of his OPRA request relied upon paragraph three of Exec. Order No. 21 (July 5, 2002), 34 N.J.R. 2487(a) (Aug. 5, 2002), which was issued for the purpose of implementing OPRA but rescinded one month later, Exec. Order No. 26 (Aug. 13, 2002), 34 N.J.R. 3043(b) (Sept. 9, 2002). The rescinded paragraph provided, in pertinent part:

> . . . an individual's home address and home telephone number, as well as his or her social security number, shall not be disclosed by a public agency at any level of government to anyone other than a person duly authorized by this State or the United States, except as otherwise provided by law, when essential to the performance of official duties, or when authorized by a person in interest.
>
> [34 N.J.R. 2487(a) (emphasis added).]

A-4742-17T4

The municipalities assert the trial court's analysis of OPRA's privacy provision was correct. They primarily rely on Boro of Park Ridge Custodian of Records, one of the Bernstein rulings, in which the GRC determined a person had a reasonable expectation of privacy in information provided to a municipality to obtain a dog license. Roselle Park contends that, despite the non-precedential value of GRC rulings as set forth in OPRA, N.J.S.A. 47:1A-1, the Burnett Court cited to Boro of Park Ridge Custodian of Records. Burnett, 198 N.J. at 424.

The municipalities contend the trial court correctly agreed with them that there was a colorable claim of privacy in the information contained in the dog license records. They further argue that Brennan is distinguishable from the situation here. In that appeal, the personal information was sought from citizens who voluntarily participated in a public auction bidding process. Whereas here,

---

Roselle Park cites Exec. Order No. 21's fourth clause, stating: "WHEREAS the Legislature further found and declared in the Open Public Records Act that a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy[.]" 34 N.J.R. 2487(a). Although it is merely a preamble to the substantive clauses, which has not been rescinded, it is also set forth verbatim in N.J.S.A. 47:1A-1 and is clearly part of the law. Burnett, 198 N.J. at 422-23 (citation omitted). Consequently, there is no merit to plaintiff's argument.

a citizen's information was given privately to municipal clerks to satisfy a legal requirement imposed by the municipalities to own a dog. It is further argued that the disclosure of the licensees and their addresses sheds no light on government transparency and there is a reasonable expectation of privacy in the information. Hence, the court was obligated to apply the Doe factors and properly did so in rejecting plaintiff's OPRA requests.

## III.

In considering the trial judge's legal conclusions concerning the release of public records under OPRA and common law, our review is de novo. N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 441 N.J. Super. 70, 89 (App. Div. 2015). We will not disturb factual findings if they are supported by adequate, substantial, and credible evidence. See Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988).

In examining the parameters of OPRA, we determine the Legislature's intent by giving its words "their ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted); N.J.S.A. 1:1-1. Only if a statute's plain reading is ambiguous, meaning "more than one plausible interpretation," or leads to an absurd result, do we look at extrinsic

A-4742-17T4

evidence, such as legislative history and committee reports, to determine the Legislature's intent.  DiProspero, 183 N.J. at 492-93 (citations omitted).

"OPRA provides for ready access to government records by the citizens of this State."  Burnett, 198 N.J. at  421-22 (citing Mason v. City of Hoboken, 196 N.J. 51, 64-65 (2008)).  "The purpose of OPRA 'is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'"  Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)).  Accordingly, OPRA directs that "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.

A "[g]overnment record" is broadly defined as, "any paper, . . . document, . . . data processed or image processed document, information stored or maintained electronically . . . or any copy . . . that has been made, maintained or kept on file in the course of . . . official business by any officer, . . . agency . . . of the State or of any political subdivision thereof . . . ."  N.J.S.A. 47:1A-1.1. The record custodian, however, must redact personal identifiers from any

document "which discloses the social security number, credit card number, unlisted telephone number, or driver license number of any person . . . ." N.J.S.A. 47:1A-1.1 and -5a.

There are twenty-three categories of documents identified in N.J.S.A. 47:1A-1.1 that fall outside the statutory definition of a government record; the Legislature considers those categories of documents confidential. Brennan, 233 N.J. at 337. One such exemption relates to "personal firearms records, except for use by any person authorized by law to have access to these records or for use by any government agency, including any court or law enforcement agency, for purposes of the administration of justice." N.J.S.A. 47:1A-1.1. The other involves the Department of Environmental Protection, Division of Fish and Wildlife's receipt of personal identifying information – "name, address, social security number, telephone number, fax number, driver's license number, email address, or social media address of any applicant or licensee" – in any application for hunting with a firearm license is not considered a government record subject to disclosure. N.J.S.A. 47:1A-1.1. However, OPRA affords no "overarching exception for the disclosure of names or home addresses" contained in government records. Brennan, 233 N.J. at 337. Hence, there is no

specific exemption for a person's identity and address when it is received by a municipality from a dog license application.[9]

Generally, we do not consider the reason behind OPRA requests. Michelson v. Wyatt, 379 N.J. Super. 611, 620 (App. Div. 2005). A person "seeking records for commercial reasons therefore has the same right to them as anyone else." Burnett, 198 N.J. at 435. That said, government records are subject to exemption when "disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. When privacy concerns are imbedded in public records, the court must inquire "whether unredacted disclosure will further the core purposes of OPRA: 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Burnett, 198 N.J. at 435 (quoting Mason, 196 N.J. at 64).

In Burnett, the Court held, "OPRA's privacy provision is directly implicated" where government records sought contain information not meant to be publicized, such as "[social security numbers (SSNs)] along with the names, addresses, signatures, and marital status of a substantial number of New Jersey

---

[9] Exemptions are given to "criminal investigatory records, victims' records, trade secrets, various materials received or prepared by the Legislature, certain records relating to higher education, and other items." Mason, 196 N.J. at 65.

residents." 198 N.J. at 428; Asbury Park Press v. Cty. of Monmouth, 201 N.J. 5, 7 (2009). Thus, there must be a "balancing test [as] outlined in [Doe, 142 N.J. at 88] to harmonize OPRA's competing concerns and evaluate whether disclosure without redacting SSNs is proper." Burnett, 198 N.J. at 428. The Doe factors are:

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Id. at 427 (quoting Doe, 142 N.J. at 88).]

Applying these factors in Burnett, the Court granted the plaintiff's request for eight million pages of various types of land title records regarding mortgages, deeds, and other documents containing individuals' addresses, signature specimens, marital status, and other details but ordered redaction of SSN's to avoid the increased risk of identity theft. Id. at 415-16, 437. The information sought was purely for commercial reasons "to catalogue and sell the information by way of an easy-to-search computerized database" thus "enabling title

insurance companies to connect regional title databases and to access them using computer software." Id. at 414-15.

Nine years later, the Court clarified when the balancing factors set forth in Doe must be applied. In Brennan, which was decided after the trial court's decision, it was held that "before an extended analysis of the Doe factors is required, a custodian [of records] must present a colorable claim that public access to the records requested would invade a person's objectively reasonable expectation of privacy." 233 N.J. at 342. Importantly, the Court recognized that "[a]side from . . . particular exemptions, . . . OPRA does not contain a broad-based exception for the disclosure of names and home addresses that appear in government records." Id. at 338.

IV.

Considering the parties' respective arguments, we are persuaded that plaintiff is entitled to the dog licensees' names and addresses. We agree with plaintiff that the Bernstein rulings have no precedential value in our consideration of OPRA appeals. N.J.S.A. 47:1A-7(e). The suggestion by the court and Roselle Park that the Burnett Court cited or specifically favored the Bernstein rulings is misplaced. Chief Justice Rabner, writing for the Court, merely mentioned Boro of Park Ridge Custodian of Records and another GRC

ruling[10] to illustrate the GRC "has also relied on the privacy provision [in OPRA] in addressing requests for access to government records." Burnett, 198 N.J. at 424. Noting the GRC is "an informal mediation program designed to resolve disputes under OPRA," the Court did not pass judgment on the wisdom of those rulings. Accordingly, the GRC's rulings will not dictate our decision here.

Turning our analysis to the specifics of plaintiff's OPRA requests, we do not consider the Doe balancing factors because the municipalities have not presented a colorable claim that the requests for names and addresses of the dog licensees invades an "objectively reasonable expectation of privacy." Brennan, 233 N.J. at 342. Based on the record before us, we do not see where the citizens in Summit and Roselle Park have a reasonable expectation of privacy in their names and addresses when they apply for a dog license. While they may not have anticipated OPRA requests such as plaintiff's, there is no indication that this information should be cloaked within privacy protection. Indeed, people who own dogs frequently walk them in public places and ordinarily do not conceal their status.

Granted, Brennan addressed the disclosure of releasing information related to a public auction conducted by a governmental body. Nevertheless,

_____

[10] Catrell v. N.J. Dep't of Corr., GRC Complaint No. 2006-121 (Feb. 28, 2007).

A-4742-17T4

we discern no erosion of protected privacy rights by allowing the release of the licensees' names and addresses. This is unlike the situation in Burnett, where the Court applied the Doe factors to balance the privacy interest in an SSN, a personal identifier, contained in government records. 198 N.J. at 428.

Except for the exemptions of personal information provided for firearms and hunting licenses, the Legisture has provided no clear exemption in OPRA against the disclosure of citizens' names and addresses when they are provided to governmental bodies as a condition to acquire a license required by law. Hence, releasing the names and addresses of the dog license holders violates no directive in OPRA, or any other law for that matter.

While we appreciate the concerns of the trial court and the municipalities that the result of plaintiff's requests may be irritating – receiving unsolicited mail from individual or entities pursuing business opportunities related to their dog ownership – to some, it is not an infringement of any established privacy interest. Some dog owners receiving plaintiff's solicitation may be interested, while others may view it as unwanted clutter in their mailboxes. We note that plaintiff disavows any plan to call dog owners with solicitations. Simply put, the dog owners would take a few seconds to view the solicitation and discard it if it is of no interest. We have not been presented with any indication suggesting

18

there is a reasonable expectation of privacy in the requested personal information because it could lead to identity theft or other unwelcomed consequences.

We recognize there is merit to the trial court's determination that plaintiff's request seeking personal information for business purposes may not be what the Legislature envisioned when it enacted OPRA. However, that is not the barometer to determine whether the request should be denied based on the statute's language. As with any new legislation, our Legislature could not foresee every type of information to be sought from the government's file cabinets, or now computer files, when OPRA was enacted. See N.J.S.A. 47:1A-9(a) (stating disclosure of any information that is protected by any other state or federal statute, regulation, executive order, or court rule is exempt from disclosure). Legislation evolves through amendments to address unforeseen concerns and societal changes. That said, we are fully aware that a proposed amendment to OPRA to exempt the disclosure of names and addresses imbedded in public records has not come to fruition. Bill S. 2819 (2013) provided any "portion of a personal government record which discloses any personal information, including the name and address, of any person[,]" is exempt from OPRA. The bill defined a "[p]ersonal government record" as "a government

record that pertains solely to a pet or home alarm system permit, license, or registration." Ibid. The bill did not become law. The Legislature, however, did pass L. 2013, c. 116, which resulted in an amendment to N.J.S.A. 47:1A-1.1, exempting the disclosure of a person's "name, address, social security number, [or] telephone number" who applies for a personal firearm or hunting license. L. 2013, c. 116, § 1.

To further illustrate the Legislature's decision not to amend OPRA to exempt the disclosure of citizens' names and home addresses, we look back to the month shortly after its enactment. A provision of Exec. Order No. 21 stated OPRA exempted the disclosure of names and home addresses, this was rescinded in Exec. Order No. 26.[11] To address the issue, the rescinding order further directed the Privacy Study Commission "to promptly study the issue of whether and to what extent the home address and home telephone number of citizens should be made publicly available by public agencies." Exec. Order No. 26 ¶5, 34 N.J.R. 3043(b) (Aug. 13, 2002). After holding hearings, the Commission's final report in 2004 recommended, among other things, non-disclosure of home telephone numbers, and individuals' home addresses under OPRA, and "[i]ndividuals should be permitted to opt out of disclosure of their

_____

[11] See footnote 8.

home addresses." STATE OF NEW JERSEY PRIVACY STUDY COMMISSION, FINAL REPORT: PRIVACY STUDY COMMISSION 16 (2004), https://dspace.njstatelib.org/xmlui/bitstream/handle/10929/22262/c58152004.pdf?sequence=1&isAllowed=y. Despite many OPRA amendments since that final report was issued, those recommendations have not been incorporated into the law through legislative action or executive order. Brennan, 233 N.J. at 338-39. Thus, it is apparent that absent some specific exemption in OPRA, a citizen's name and address should be disclosed. Because the municipalities can point to no such exemption regarding a licensee's name and address set forth in a dog license, plaintiff's request should have been granted.

We are mindful that through technology, our citizenry has constantly received unwanted solicitation by emails, or calls to their home phones and cell phones, from for-profit and non-profit entities offering their services. In fact, those solicitations are probably viewed as more of a nuisance than the mailings plaintiff intends to send. Our legislative bodies have heard the public's outcry and have stepped in and created do-not-call registries regarding such solicitations. See N.J.S.A. 56:8-127; 47 U.S.C. § 227. Accordingly, should the Legislature disagree with interpretation of OPRA, it can override our ruling by adding more definitive restrictions beyond those presently delineated in OPRA

A-4742-17T4

or other laws regarding the access to information that citizens seek.  See J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 247-48 (2019) (Rabner, C.J. dissenting).

Given our conclusion that plaintiff is entitled to the requested information under OPRA, we need not address his common law claim.  See Brennan, 233 N.J. at 343.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4742-17T4