SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Ernest Bozzi v. City of Jersey City (A-12-20) (084392)

**Argued March 15, 2021 -- Decided September 20, 2021**

**FERNANDEZ-VINA, J., writing for the Court.**

The Court considers whether owning a dog creates an objectively reasonable expectation of privacy such that the owner's personal information in the dog licensing record might be exempt from disclosure under the Open Public Records Act (OPRA).

Plaintiff Ernest Bozzi requested copies of defendant Jersey City's most recent dog license records pursuant to OPRA and the common law right of access. Plaintiff, a licensed home improvement contractor, sought the information on behalf of his invisible fence installation business. Plaintiff noted that Jersey City may redact information relating to the breed of the dog, the purpose of the dog, and any phone numbers associated with the records. He sought only the names and addresses of the dog owners.

Jersey City denied plaintiff's request on two grounds. First, Jersey City alleged that the disclosure would be a violation of the citizens' reasonable expectation of privacy, contrary to N.J.S.A. 47:1A-1, by subjecting the dog owners to unsolicited commercial contact. Second, it expressed concern that such a disclosure may jeopardize the security of both dog-owners' and non-dog-owners' property. Plaintiff filed suit.

The trial court found the dog licensing records were not exempt and ordered Jersey City to provide the requested information. Despite finding no objectively reasonable privacy interest, the trial court went on to analyze the seven privacy factors set forth in Doe v. Poritz, 142 N.J. 1 (1995), finding each of them to be neutral or in support of plaintiff's position. The Appellate Division affirmed, relying on Bozzi v. Borough of Roselle Park, 462 N.J. Super. 415 (App. Div. 2020), a nearly identical case involving the same OPRA petitioner. The Court granted certification. 246 N.J. 580 (2020).

**HELD:** Owning a dog is a substantially public endeavor in which people do not have a reasonable expectation of privacy that exempts their personal information from disclosure under the privacy clause of OPRA.

1. OPRA, at its core, was designed to promote transparency in the operation of government. According to the statute, "all government records shall be subject to public

1

access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. The public's right to disclosure, while broad, is not unlimited. The privacy clause of OPRA "directs agencies to safeguard personal information that, if disclosed, 'would violate [a] citizen's reasonable expectation of privacy.'" Brennan v. Bergen Cnty. Prosecutor's Off., 233 N.J. 330, 339-40 (2018) (alteration in original) (quoting N.J.S.A. 47:1A-1). (pp. 10-12)

2. The Court reviewed the meaning of OPRA's privacy clause in Brennan and concluded from the Legislature's express exemption of names and addresses in certain contexts that, beyond those "select situations," there is no "overarching exception for the disclosure of names or home addresses." 233 N.J. at 337-38 (discussing N.J.S.A. 47:1A-1.1). The decision highlighted the Legislature's continuing process of amending OPRA, which has not included the enactment of any such overarching exception. Id. at 338-39. The Brennan Court found that legislative inaction particularly significant in light of the recommendations in a 2004 report from the Privacy Study Commission. That report placed issues like the one presented in this case squarely before the Legislature, and the Legislature declined to act on them. The Court found in Brennan, and finds here, that the Legislature's inaction with respect to the recommended exemptions strongly cautions against creating a judicial exemption in this context. (pp. 12-13)

3. When a request does not fall within an express exemption, a records custodian may still assert that the requested information should not be disclosed under the privacy clause. That clause requires the presentation of "a colorable claim that public access to the records requested would invade a person's objectively reasonable expectation of privacy." Id. at 342. The key to such a claim has been a distinction between actions and information typically kept private versus those extended to the public. Only after finding a privacy interest is a court required to look to the Doe factors to balance the need for disclosure against the privacy interest at stake. (pp. 13-14)

4. Here, the records are government records "kept on file in the course of . . . official business" and do not fall into any of the express exemptions in N.J.S.A. 47:1A-1.1. The commercial nature of plaintiff's request is immaterial; he has the same right to the records as anyone else. OPRA's privacy clause may nonetheless require a balancing of the twin aims of OPRA -- government transparency and an obligation to safeguard personal information -- if disclosure would "violate [a] citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. But, under Brennan, there is no overarching exemption for the disclosure of names and addresses, and the Court finds no reasonable expectation of privacy in owning or licensing a dog. Owning a dog is, inherently, a public endeavor. Owners and their dogs are regularly exposed to the public during daily walks, grooming sessions, and veterinarian visits. Dog owners who continually expose their dogs to the public cannot claim that dog ownership is a private undertaking. (pp. 14-16)

5.  While plaintiff here has requested only the names and addresses of dog owners, the Court stresses that there are other parts of the dog licensing records that would give rise to security concerns.  Any similar disclosure of dog records should not include breed information or the purpose of the animal, and the names of dogs may need to be excluded.  (p. 16)

6.  Because Jersey City has not established a colorable claim that public access to the names and addresses of dog owners would violate a reasonable expectation of privacy, the Court need not conduct an extended Doe analysis.  The Court agrees with the evaluation of the trial court that the factors collectively favor disclosure.  The Court continues to abide by the plain language of OPRA and its fundamental policy favoring disclosure.  (pp. 16-17)

**The judgment of the Appellate Division is AFFIRMED.**

**JUSTICE PIERRE-LOUIS, dissenting,** stresses that OPRA's core purpose is to promote transparency in the operation of government and that, although OPRA itself states that the law is to "be construed in favor of the public's right of access," it also directs the safeguarding of personal information if disclosure "would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1.  In Justice Pierre-Louis's view, that reasonable expectation of privacy should recognize every citizen's right not to have each and every piece of information provided to the government divulged for reasons that do not further the purpose of OPRA, and the fact that information may be available elsewhere does not eliminate a person's reasonable expectation of privacy altogether.  Noting that the information sought here -- name, address, and dog ownership -- taken together, is not public, Justice Pierre-Louis finds it reasonable that dog owners would have expected that the information they provided to Jersey City for the sole purpose of complying with the law by obtaining a dog license would remain private.  Justice Pierre-Louis reviews the Doe privacy factors and finds that five out of seven factors also militate against disclosure.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUSTICE FERNANDEZ-VINA's opinion.  JUSTICE PIERRE-LOUIS filed a dissent, in which JUSTICE ALBIN joins.**

3

# SUPREME COURT OF NEW JERSEY
## A-12 September Term 2020
### 084392

Ernest Bozzi,

Plaintiff-Respondent,

v.

City of Jersey City and Irene McNulty,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 15, 2021 | September 20, 2021 |

Maura E. Connelly, Assistant Corporation Counsel,
argued the cause for appellants (Peter J. Baker, Jersey
City Law Department Corporation Counsel, attorneys;
Maura E. Connelly and John McKinney, Assistant
Corporation Counsel, on the brief).

Donald M. Doherty, Jr., argued the cause for respondent
(Donald M. Doherty, Jr., on the brief).

Carl R. Woodward, III, argued the cause for amici curiae
New Jersey State League of Municipalities and New
Jersey Institute of Local Government Attorneys (Carella,
Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Carl
R. Woodward, III, on the brief).

Megan Iorio, of the District of Columbia bar, admitted
pro hac vice, argued the cause for amicus curiae

1

Electronic Privacy Information Center (Barry, Corrado, Grassi and Electronic Privacy Information Center, attorneys; Frank L. Corrado, Megan Iorio, and Alan Butler, of the District of Columbia bar, admitted pro hac vice, on the brief).

CJ Griffin argued the cause for amicus curiae Libertarians for Transparent Government (Pashman Stein Walder Hayden, attorneys; CJ Griffin, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this case we are called on to determine whether owning a dog creates an objectively reasonable expectation of privacy such that the owner's personal information in the dog licensing record might be exempt from disclosure under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

Plaintiff Ernest Bozzi submitted a request to the City of Jersey City (Jersey City) for dog license records in order to solicit customers for his invisible fencing business. He sought only the names and addresses of dog owners. Jersey City denied his request, objecting on the ground that such a disclosure would violate the dog owners' reasonable expectation of privacy.

The trial court found no privacy interest prohibiting disclosure and ordered Jersey City to comply with plaintiff's request. The Appellate Division

2

affirmed, relying on Bozzi v. Borough of Roselle Park, 462 N.J. Super. 415 (App. Div. 2020), a nearly identical case involving the same OPRA petitioner.

We affirm the judgment of the Appellate Division and find that owning a dog is a substantially public endeavor in which people do not have a reasonable expectation of privacy that exempts their personal information from disclosure under the privacy clause of OPRA.

I.

A.

We begin by summarizing the pertinent facts and procedural history.

On November 27, 2018, plaintiff Ernest Bozzi requested copies of Jersey City's most recent dog license records pursuant to OPRA and the common law right of access. Plaintiff is a licensed home improvement contractor, and he sought the information on behalf of his invisible fence installation business. In his request, plaintiff noted that Jersey City may redact information relating to the breed of the dog, the purpose of the dog -- if it is a service or law enforcement animal -- and any phone numbers associated with the records. He sought only the names and addresses of the dog owners.

Jersey City denied plaintiff's request a month later, objecting to the release of the information on two grounds. First, Jersey City alleged that the disclosure would be a violation of the citizens' reasonable expectation of

3

privacy, contrary to N.J.S.A. 47:1A-1, by subjecting the dog owners to unsolicited commercial contact. And second, it cited a decision by the Government Records Council (GRC), <u>Bernstein v. Borough of Park Ridge</u>, GRC Complaint No. 2005-99 (July 2005), for its concern that such a disclosure may jeopardize the security of both dog-owners' and non-dog-owners' property, as well as potentially put the dogs themselves at risk for theft.

Plaintiff filed suit, and the trial court issued an order to show cause requiring Jersey City to demonstrate why the records should be exempt from disclosure. Jersey City submitted two certifications to support its position, one from its Chief of Police and a second from its Project Manager in the Department of Public Safety.

The Chief of Police certified that the Police Division was "exceptionally concerned" about the release of the names of dog owners for a number of reasons. For one, those residing at addresses known not to have dogs on the premises may be exposed as more vulnerable to robbery or burglary. Further, disclosure may expose the locations of victims who have fled from threats, stalking, and other harm. And finally, knowing an address has a dog may encourage wrongdoers to bring a weapon.

The Project Manager's certification detailed the results of his search for reported thefts of dogs in Jersey City. According to his search, there were five

4

dogs reported stolen in 2018 -- three from yards, one from an apartment, and one taken by a friend entrusted to walk the dog.

At the conclusion of argument, the trial court found the dog licensing records were not exempt and ordered Jersey City to provide the requested information to plaintiff. The trial court acknowledged the potential for privacy concerns but concluded that "someone who simply registers their dog [does not have] a[n] objectively reasonable belief that it's going to be kept private or confidential." Despite this finding, the trial court went on to analyze the seven Doe privacy factors,[1] finding each of them to be neutral or in support of plaintiff's position.

Jersey City appealed, and the Appellate Division summarily affirmed, relying on its published decision in Bozzi v. Borough of Roselle Park, in which the same plaintiff sought the same information from a different defendant.

In Roselle Park, the Appellate Division permitted under OPRA the disclosure of the names and addresses of those who obtained dog licenses. 462 N.J. Super. at 428. After determining that GRC rulings would "not dictate [the court's] decision"[2] because they had "no precedential value in [the]

_____

[1] Doe v. Poritz, 142 N.J. 1 (1995).

[2] The Borough of Roselle Park and the City of Summit had argued that Bernstein v. Borough of Park Ridge, GRC Complaint No. 2005-99 (July 14, 2005), supported their positions because the GRC determined that an

consideration of OPRA appeals," ibid., the court found that residents of Summit and Roselle Park did not "have a reasonable expectation of privacy in their names and addresses when they appl[ied] for a dog license," id. at 429.

The court pointed out that "people who own dogs frequently walk them in public places and ordinarily do not conceal their status." Ibid. And although the court acknowledged that receiving unsolicited mail from plaintiff's business may be irritating, it found no risk of "identity theft or other unwelcomed consequences" that might create an expectation of privacy. Id. at 429-30. Finally, the Appellate Division was persuaded by the fact that the Legislature had previously tried and failed to amend OPRA to exempt the disclosure of names and addresses in connection with pet licenses. Id. at 430-31.

This Court then granted Jersey City's petition for certification. 246 N.J. 580 (2020). We also granted the motions of the Libertarians for Transparent Government (LFTG), the Electronic Privacy Information Center (EPIC), the New Jersey State League of Municipalities (League), and the New Jersey Institute of Local Government Attorneys (NJILGA) to participate as amici curiae.

---

individual had a reasonable expectation of privacy in information provided to a municipality for the purpose of obtaining a dog license.

II.

A.

Jersey City contends that the names and addresses sought by plaintiff for the expressed purpose of commercial solicitation are protected by the privacy exception of OPRA. The core of Jersey City's argument is that dog owners have a reasonable expectation of privacy in their names and addresses listed on their dog licenses. Jersey City further argues that the commercial nature of the request does not promote government transparency or achieve any of the main goals of OPRA.

As for the Doe factors, Jersey City posits that they weigh heavily in favor of non-disclosure. Jersey City highlights that there are no safeguards to prevent subsequent unauthorized disclosures and that plaintiff could therefore publish or sell the names and addresses he receives through his request. Since some dogs are used for protection, Jersey City argues that releasing that information jeopardizes safety by publicizing which residences have dogs and which do not. Finally, the City raises the concern that fear of the disclosure of personal information may discourage dog owners from registering their animals.

B.

Amicus curiae EPIC aligns itself with Jersey City and first contends that federal courts have found a colorable privacy interest in names and addresses contained in public records when disclosure of that information could lead to unwanted solicitations. Second, EPIC maintains that the Federal Constitution includes a right to informational privacy and that the Freedom of Information Act (FOIA), the federal analog to OPRA, encompasses an individual's right to informational privacy. Finally, EPIC argues that requests for information that are justified only by commercial interests do not serve the purpose of OPRA. It urges this Court to adopt a rule that those who request personal information in a government record must make a threshold showing of a public interest that serves the core purpose of OPRA.

C.

Amici curiae the League and NJILGA also align themselves with Jersey City. They argue, in a joint brief, that the disclosure of a digital compilation of names and addresses of dog owners violates those persons' reasonable expectation of privacy. Walking a dog in public, amici contend, does not disclose the owner's name and address and therefore does not undermine the privacy interest.

8

D.

Plaintiff counters that Jersey City has failed to make a colorable claim that disclosure of the requested dog license records would invade a dog owner's objectively reasonable expectation of privacy. He submits that owners of dog licenses do not have an objectively reasonable expectation of privacy under this Court's precedent in <u>Brennan v. Bergen County Prosecutor's Office</u>, 233 N.J. 330 (2018), because the names and addresses contained in dog licenses are not the type of information the typical person keeps secret.

Plaintiff also stresses that nothing in OPRA bars his request simply because of its commercial nature. He points out that New Jersey law has never deemed a requestor's proposed commercial use of the records as incompatible with OPRA and that all limitations on access under OPRA should be construed in favor of providing access.

E.

Amicus curiae LFTG aligns itself with Bozzi to argue that no objectively reasonable person would believe that their ownership of a dog is a private fact, given that dogs are constantly exposed to public view. Even if Jersey City has made a colorable claim of privacy, LFTG submits that balancing the privacy factors in <u>Doe</u> compels disclosure.

LFTG emphasizes that OPRA does not require records custodians to consider the reason for a given request. It points out that the Legislature has failed to advance a number of bills that would have denied commercial requestors access to records under OPRA. LFTG also stresses that OPRA expressly exempts driver's license numbers and personal identifying information of those who hold hunting and firearm licenses but that the Legislature has declined to exempt that same information for holders of dog licenses.

III.

A.

This Court's review of issues involving statutory interpretation is plenary. In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 273 (2017). Whether an OPRA exemption applies is a question of law subject to de novo review. Id. at 273-74.

This Court's objective in statutory construction "is to effectuate legislative intent," and "[t]he best source for direction on legislative intent is the very language used by the Legislature." Gilleran v. Township of Bloomfield, 227 N.J. 159, 171-72 (2016). The words in a statute are to "be given their generally accepted meaning" and "read and construed with their context." N.J.S.A. 1:1-1. "If the language is clear, the court's job is

10

complete." In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014). We look to extrinsic sources to determine legislative intent "[o]nly if the words of the enactment are shrouded in ambiguity," Zabilowicz v. Kelsey, 200 N.J. 507, 513 (2009), "lead[] to more than one plausible interpretation," DiProspero v. Penn, 183 N.J. 477, 492-93 (2005), or would lead to absurd results, Burnett v. County of Bergen, 198 N.J. 408, 425 (2009).

On review, this Court presumes that the Legislature is aware of the judicial construction given its enactments. N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002).

## B.

OPRA, at its core, was "designed to promote transparency in the operation of government," Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012), with a purpose "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process," Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)). According to the statute, "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.

The public's right to disclosure, while broad, is not unlimited. Kovalcik v. Somerset Cnty. Prosecutor's Off., 206 N.J. 581, 588 (2011). The privacy clause of OPRA "directs agencies to safeguard personal information that, if disclosed, 'would violate [a] citizen's reasonable expectation of privacy.'" Brennan, 233 N.J. at 339-40 (alteration in original) (quoting N.J.S.A. 47:1A-1).

This Court recently reviewed the meaning of OPRA's privacy clause in Brennan. We explained that OPRA contains twenty-three explicit exemptions from disclosure, including any "personal identifying information" -- a person's name and address -- received "in connection with the issuance of any license authorizing hunting with a firearm." Id. at 337-38 (quoting N.J.S.A. 47:1A-1.1). We concluded from the Legislature's express exemption of names and addresses in certain contexts that, beyond those "select situations," there is no "overarching exception for the disclosure of names or home addresses." Id. at 337-38.

Our decision highlighted the Legislature's continuing process of amending OPRA, which has not included the enactment of any such overarching exception. Id. at 338-39. We found that legislative inaction particularly significant in light of the recommendations in the 2004 report from the Privacy Study Commission, created by Governor McGreevy in 2002

12

through Executive Order No. 21.  Ibid.  The recommendations in that report included not disclosing home telephone numbers; notifying individuals that their home addresses may be disclosed; and giving individuals the opportunity to use an address of record specifically for disclosure purposes.  See Final Report, https://dspace.njstatelib.org/xmlui/bitstream/handle/10929/22262/ c58152004.pdf?sequence=1&isAllowed=y.  Those recommendations thus placed issues like the one presented in this case squarely before the Legislature, and the Legislature declined to act on them.  See Brennan, 233 N.J. at 339.  We found in Brennan, and we continue to find here, that the Legislature's inaction with respect to the recommended exemptions strongly cautions against creating a judicial exemption in this context.

When a request does not fall within an express exemption, a records custodian may still assert that the requested information should not be disclosed under the privacy clause.  That clause requires the presentation of "a colorable claim that public access to the records requested would invade a person's objectively reasonable expectation of privacy."  Id. at 342.  The key to such a claim has been a distinction between actions and information typically kept private versus those extended to the public:  social security numbers in land title records in Burnett and financial relief checks in Carter both presented serious privacy concerns, while the results of a public auction in Brennan and

13

the settlement agreement between a county and an employee resulting from the employee's filing of a public complaint in Asbury Park did not. See Burnett, 198 N.J. at 437; Carter, 230 N.J. at 267; Brennan, 233 N.J. at 342; Asbury Park Press v. County of Monmouth, 201 N.J. 5, 6 (2010).

Only after finding a privacy interest is a court required to look to the Doe factors adopted by this Court in Burnett to balance the need for disclosure against the privacy interest at stake. See 198 N.J. at 428.

IV.

Applying those principles here, we conclude that Jersey City has failed to present a colorable claim that the disclosure of the requested dog license records would invade a dog owner's reasonable expectation of privacy. We therefore affirm the Appellate Division's judgment.

We make two initial points. First, it is clear that the dog license records sought in this case are government records "kept on file in the course of . . . official business" and do not fall into any of the express exemptions in OPRA. N.J.S.A. 47:1A-1.1. Second, the commercial nature of plaintiff's request is immaterial to our analysis; he "has the same right to [the records] as anyone else." Burnett, 198 N.J. at 435.

We therefore turn to OPRA's privacy clause, which may nonetheless require a balancing of the twin aims of OPRA -- government transparency and

14

an obligation to safeguard personal information -- if disclosure of the records would "violate [a] citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1.

Our decision in <u>Brennan</u> clearly precludes any reading of OPRA that would provide an overarching exemption for the disclosure of names and addresses. <u>See</u> <u>Brennan</u>, 233 N.J. at 388. It is, therefore, the ownership and licensing of a dog that would have to provide a reasonable expectation of privacy for Jersey City to make such a colorable claim. And it is here that Jersey City's claim fails, because we find no reasonable expectation of privacy in owning or licensing a dog.

Owning a dog is, inherently, a public endeavor. Owners -- and the dogs themselves -- are regularly exposed to the public during daily walks, grooming sessions, and veterinarian visits. Many owners celebrate their animals on social media or bumper stickers, inherently public platforms. Some people put up signs stating that there is a dog at the residence; others frequent certain parks or establishments specifically made for dogs and dog owners. Some owners even enter their dogs into public shows, events, and competitions. Dog owners who continually expose their dogs to the public cannot claim that dog ownership is a private undertaking. Just like the participants in the public

15

auction in <u>Brennan</u>, dog owners are fully aware of the public exposure of their actions.

While plaintiff here has requested only the names and addresses of dog owners, we stress that there are other parts of the dog licensing records that would give rise to security concerns. Any similar disclosure of dog records should not include breed information, which poses a risk to public safety given the high value of certain purebred dogs. Further, the purpose of the animal -- whether it is a companion or a service or a law enforcement dog -- must be kept confidential for the health and safety of the owners and the dogs. Finally, the names of dogs may need to be excluded, given that many people use the names of their beloved pets as passwords or answers to important security questions.

Because Jersey City has not established a colorable claim that public access to the names and addresses of dog owners would violate a reasonable expectation of privacy, we need not conduct an extended <u>Doe</u> analysis. <u>Burnett</u>, 198 N.J. at 428. Suffice it to say, we agree with the thorough evaluation of the trial court that the factors collectively favor disclosure.

We are bound by the language of OPRA and the intent of the Legislature in safeguarding personal information. The inadequacies complained of by Governor McGreevy and the recommendations made by the Privacy Study

16

Commission were not corrected or adopted by the Legislature. Thus, we continue to abide by the plain language of the statute and its fundamental policy favoring disclosure.

V.

We affirm the judgment of the Appellate Division.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE PIERRE-LOUIS filed a dissent, in which JUSTICE ALBIN joins.

17

Ernest Bozzi,

Plaintiff-Respondent,

v.

City of Jersey City and Irene McNulty,

Defendants-Appellants.

JUSTICE PIERRE-LOUIS, dissenting.

The government, at all levels, demands a plethora of personal information from its citizens who must file tax returns, census reports, applications for licenses, and other various records as part of the everyday incidents of life. But not all of the information we are compelled to give the government belongs in the public domain.

The core purpose of the Open Public Records Act (OPRA) is to "promote transparency in the operation of government," Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012), and "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process," Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)). The release of

1

the names and addresses of all persons who applied for a dog license in a municipality does not implicate the core purpose of OPRA.

Although OPRA itself states that the law is to "be construed in favor of the public's right of access," it also directs the safeguarding of personal information if disclosure "would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. That reasonable expectation of privacy should recognize every citizen's right not to have each and every piece of information provided to the government divulged for reasons that do not further the purpose of OPRA.

In the present case, the OPRA request involves the release of names and addresses of dog license holders in Jersey City. Although those records do not implicate the traditional government operations the Legislature intended OPRA to shed light on, the majority finds no reasonable expectation of privacy in the information and holds that the records must be released. Because I find that there exists an objectively reasonable privacy interest in the records and that the privacy interest outweighs the need for disclosure pursuant to OPRA, I respectfully dissent.

I.

A.

In enacting OPRA, the Legislature included a carve-out to safeguard from disclosure the release of information that would violate the citizenry's reasonable expectation of privacy. N.J.S.A. 47:1A-1. In addition to the statute's express exemptions of certain types of records from disclosure, OPRA's privacy provision is a catch-all that captures those records that are not specifically exempted by the Legislature but are nevertheless subject to a reasonable expectation of privacy. Indeed, it would be quite difficult to delineate every possible government record in which disclosure would encroach upon the citizenry's reasonable expectation of privacy. The privacy provision thus enables OPRA both to capture any privacy interests not specifically identified by the plain language of the statute and to account for the evolution of privacy interests over time.

It is a fact of life that residents of this State and country are obligated to provide a certain amount of information to the government. But the fact that we are required by law to provide information to the entities by which we are governed does not mean that we do not retain some element of privacy in our personal information. It matters not that, in our modern world, some of our personal information is available from a variety of sources, including the

3

pervasive, far-reaching internet. The fact that information may be available elsewhere "does not eliminate a person's reasonable expectation of privacy altogether." Burnett v. County of Bergen, 198 N.J. 408, 430 (2009). The question here is whether the government must act as a clearinghouse of that information, even in circumstances where a privacy interest exists and the information sought has no relation to the purpose behind OPRA.

In the present case, it is undisputed that in order to legally own a dog in Jersey City, residents are required to register their names, addresses, and the breed of their dog, among other things, to obtain a dog license. When Jersey City residents, acting as good citizens, register their dogs and obtain licenses, it is difficult to imagine that they believe the information provided to their local government in compliance with the law will be subject to widespread distribution to anyone who makes a request under the guise of transparency of government functions.

Plaintiff, and the majority, assert that owning a dog is a public endeavor because dog owners often walk their dogs in public. Certainly, people with dogs do not hide the fact of ownership when they go out in public with their pets. But dog owners appearing in public with their dogs do not do so while simultaneously advertising their full names and addresses. The information sought here -- name, address, and dog ownership -- taken together, is not

4

public, and it is unlikely that dog owners envisioned that the government would turn over that information to the general public wholesale pursuant to OPRA requests.

Defendants argue that dissemination of the dog license information, which invites unsolicited contact or intrusion, is protected by OPRA's privacy exception because dog license holders have a reasonable expectation that their information will not be disseminated for the purpose of commercial solicitation. I agree with the majority that the purpose behind the request is generally not relevant to our threshold inquiry of whether a reasonable expectation of privacy exists. Our case law has made clear that an entity seeking records for a commercial purpose has the same right to available records as anyone else. See Burnett, 198 N.J. at 435. But defendants' argument that dog owners have a privacy interest in preventing the general dissemination of their information, which could lead to unwanted contact and intrusion, is compelling. The right to be left alone and not have the government, which has been entrusted with your information, serve as a conduit for such intrusion is entirely reasonable.

Unlike the public auction in Brennan v. Bergen County Prosecutor's Office, licensing a dog in New Jersey is hardly "a quintessential public event that calls for transparency." See 233 N.J. 330, 343 (2018). It is reasonable

5

that dog owners would have expected that the information they provided to Jersey City for the sole purpose of complying with the law by obtaining a dog license would remain private. Therefore, I would find that there is a reasonably objective privacy interest in the dog license records.

B.

Because I believe that defendants have presented a colorable claim that the OPRA request would invade dog license holders' reasonable expectation of privacy, I next turn to the factors identified in Doe v. Poritz, 142 N.J. 1, 88 (1995), to balance that privacy interest against the public's interest in disclosure of the records. In Burnett, this Court adopted the following seven privacy factors outlined in Doe to assess whether disclosure pursuant to OPRA was appropriate in light of the privacy concerns:

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Burnett, 198 N.J. at 427 (quoting Doe, 142 N.J. at 88).]

In my view, five out of the seven factors (factors three through seven) militate against disclosure in this case. Regarding factor three, there is certainly potential for harm from disclosure of these records. Although OPRA protects

6

from disclosure the personal information of crime victims in government records,[1] the reality is that many crimes, particularly domestic violence offenses, go unreported. Thus, victims who never reported the crimes committed against them are not classified as victims in any government databases, and their information therefore would not be shielded against such a records request. Unfortunately, dog license records could be used by those with nefarious intentions as an avenue to obtain the addresses of crime victims, or others seeking anonymity, if the requestor knows that the victim owns a dog.

In assessing the harm to the relationship between citizens and the government in factor four, there is a concern that residents might decide to forego registering their dogs or providing other types of information to their local governments for fear that every piece of information provided will be subject to public disclosure. Regarding factor five, there do not appear to be any safeguards in place to prevent the unauthorized disclosure of the information central to this case once it is disseminated.

Last, turning to factors six and seven, although our courts do not generally consider the purpose behind OPRA requests, "when legitimate privacy concerns exist that require a balancing of interests and consideration of the need for access, it is appropriate to ask whether . . . disclosure will further

---

[1] See N.J.S.A. 47:1A-2.2 and :4-2 to -4.

7

the core purposes of OPRA." Burnett, 198 N.J. at 435. In assessing the need for access here, it is evident that nothing in plaintiff's request for dog license records to promote his invisible fence business furthers OPRA's purpose of informing the public about government activities and guarding against corruption and misconduct. There is, therefore, no great need for access here. The articulated public interest of transparency in government, which normally weighs in favor of disclosure, is simply absent in this case because the records fall outside traditional areas of public concern that actually shine a light on government functions. And the non-disclosure of this information would do nothing to jeopardize OPRA's core purpose because the request has no connection whatsoever to the objective behind OPRA.[2]

---

[2] Although I do not believe these records should be subject to wholesale disclosure pursuant to OPRA, I do think that this information could be made accessible in limited circumstances pursuant to the common law right of access. As was discussed during oral argument, there may be situations, for example, in which someone is terrified of dogs and seeks information about dog license holders in a particular neighborhood where they are looking to buy a house. That person could make a particularized showing for information on dog license holders in a certain neighborhood pursuant to the common law right of access. Unlike OPRA requests, a requestor seeking documents under the common law must "establish an interest in the subject matter of the material" and the "right to access must be balanced against the State's interest in preventing disclosure." Keddie v. Rutgers, 148 N.J. 36, 50 (1997) (quotations omitted). In such circumstances, limited records can be made available under the common law where appropriate. In contrast, the application of OPRA would require the widespread distribution of information on every single dog license holder in a municipality.

8

## II.

The privacy provision in OPRA is meant to guard against the disclosure of information in which citizens have a reasonable expectation of privacy. In light of the Court's decision today, it appears the bar to making a colorable privacy claim is so high that there may be very few privacy interests that OPRA will respect.

For those reasons, I respectfully dissent.